466 U.S. 720 (1984)
NATIONAL LABOR RELATIONS BOARD
v.
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRONWORKERS, LOCAL 480, AFL-CIO
No. 83-1202.
Supreme Court of United States.
Decided May 14, 1984
ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
*721 PER CURIAM.
This case presents the question whether the Court of Appeals may modify an award of backpay by the National Labor Relations Board on the grounds that the Board failed promptly to specify the amounts of the award. As the decision of the Court of Appeals apparently is inconsistent with this Court's precedents, we grant the petition for writ of certiorari and reverse.

I
Respondent, Local 480 of the International Association of Bridge, Structural & Ornamental Ironworkers, AFL-CIO, operates a hiring hall for construction workers in northern New Jersey. The lengthy procedural history of the present case begins in May 1978 with the Board's finding that the Local had violated §§ 8(b)(1)(A) and (2) of the National Labor Relations Act, 29 U. S. C. §§ 158(b)(1)(A) and (2), by discriminating against nonmembers in its hiring hall referral practices.[1] The Board ordered the Local to compensate the *722 five charging parties and other "similarly situated" employees for earnings lost because of discrimination. Ironworkers, Local 480, 235 N. L. R. B. 1511 (1978). The lost earnings were to be calculated according to a formula established by the Board.[2] On May 11, 1979, the Court of Appeals for the Third Circuit granted enforcement of the Board's order. 598 F. 2d 611.
The Board then began preparation of a backpay specification.[3] To identify employees who had been subject to discrimination, the Board's Regional Office employed the General Services Administration to conduct a computer analysis of respondent's records. The computer was to perform the laborious task of comparing the sign-up dates and qualifications of nonunion members with those of all union members who had been referred ahead of them.[4] Until October 1980, the union slowed the process by refusing to permit photocopying of relevant records. Preparation of the backpay specification was further delayed when the Regional Office in February 1981 discovered a substantial computer error that would require that the entire analysis be performed again at great expense to the Board. After settlement negotiations proved fruitless, the Board authorized reanalysis of the computer data.
*723 In April 1982, as no backpay specification yet had issued, the Local filed a motion seeking relief from that part of the Court of Appeals order of May 11, 1979, that directed backpay for nonmember applicants "similarly situated" to the five charging parties. The Local urged that the lengthy delay in issuance of the specification demonstrated that the Board's order would be impossible to implement. Further, the Local contended that it had ceased discriminatory activity, that no "similarly situated" workers had come forward to allege discrimination, and that the Board's delay in resolving the case had impaired the Local's operations. The Court of Appeals on May 13, 1982, denied the motion "without prejudice to renew such motion after 90 days." App. to Pet. for Cert. 7a-8a.
The Local renewed the motion on September 29, 1982. The General Counsel at that time estimated that the backpay specifications for similarly situated discriminatees would be completed by April 1983. The Court of Appeals, however, ordered the Board to enter its formal backpay specification by December 31, 1982.
To comply with this order, the Board set about preparing a separate list of employees who had suffered discrimination at respondent's hiring hall. In estimating the amount of backpay due to each employee, it was necessary for the Board to obtain information as to earnings that was available only from the Ironworkers Pension and Welfare Fund. The Fund refused to provide the Board with this information without a subpoena or court order. Uncertain that such litigation successfully could be concluded in time to meet the deadline set by court order, the Board prepared a specification based upon projections from records of earnings that it had available. The Board submitted its Specification and Notice of Hearing on December 21, 1982, and set the case for May 16, 1983. The Board later obtained the Fund's earnings records pursuant to an investigatory subpoena and revised its specification to incorporate complete information on actual earnings. The revision decreased by one-fourth the Local's liability.
*724 On February 25, 1983, respondent filed its third motion for relief from the original backpay judgment, requesting the court to require backpay only for named parties or to terminate the proceedings altogether. The Local contended that the Board's specification of December 21, 1982, because it was not based upon actual earnings, was inconsistent with the Board's rules and with the Board's original backpay order. Further, the Local argued that the specification was "punitive" because the total liability exceeded the Local's ability to pay. On July 27, 1983, the Court of Appeals modified the Board's order to require that the Local tender backpay only to the charging parties and only as calculated by the backpay specification of December 21, 1982.[5]

II
The Court of Appeals gave as its justification for modifying the Board's order "the length of time that elapsed since the entry of [the court's] original judgment." App. to Pet. for Cert. 1a. It is well established, however, that the Court of Appeals may not refuse to enforce a backpay order merely because of the Board's delay subsequent to that order in formulating a backpay specification. NLRB v. Rutter-Rex Mfg. Co., 396 U. S. 258 (1969).
The present case in some respects differs from Rutter-Rex. In Rutter-Rex, the Court of Appeals cut off the accrual of backpay at an earlier date than had the Board. Id., at 263. In the present case, the Court of Appeals has limited the *725 class of employees to whom backpay may be awarded and has prohibited the Board from amending its backpay specification as the Board's regulations would permit, see 29 CFR § 102.57 (1983). Nonetheless, the principle of Rutter-Rex remains applicable: "[T]he Board is not required to place the consequences of its own delay, even if inordinate, upon wronged employees. . . ." 396 U. S., at 265. By restricting the beneficiaries of the Board's remedy and abridging procedures lawfully established by the Board for determining the amount of backpay, the order under review punishes employees for the Board's nonfeasance.[6] This Rutter-Rex forbids.[7]
It is not entirely clear that the order of the Court of Appeals was premised simply upon the Board's delay. The text of the order only hints at the court's reasoning. Respondent had argued before the Court of Appeals that the Board's long delay further demonstrated the impossibility of identifying the employees who had been subject to discrimination and of performing the calculations required by the Board's backpay formula. Respondent also had contended that the Board's specification of December 21, 1982, showed that the Board's order was "punitive" and "confiscatory." App. to Pet. for *726 Cert. 63a. We do not consider whether the Court of Appeals on these grounds may modify its original judgment enforcing the Board's order. Nor do we foreclose challenges that might be raised to the conduct or outcome of the supplemental backpay proceedings.
But as it appears that the Court of Appeals may have rested the judgment under review simply upon the failure of the Board to act promptly, that judgment must be reversed and the case remanded for further proceedings consistent with this opinion.
It is so ordered.
JUSTICE MARSHALL dissents from this opinion deciding this case without briefing on the merits or oral argument.
NOTES
[1] Section 158(b) prohibits various unfair labor practices by labor organizations. That subsection provides in pertinent part:

"It shall be an unfair labor practice for a labor organization or its agents  (1) to restrain or coerce (A) employees in the exercise of the rights guaranteed in section 157 of this title . . . ."
"(2) to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section or to discriminate against an employee with respect to whom membership in such organization has been denied or terminated on some ground other than his failure to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership."
Section 158(a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." Section 157, as relevant here, protects the right to refrain from union activity.
A 1972 consent decree generally obligates respondent Local to refer applicants to jobs in order of registration at the hiring hall. The Local unlawfully discriminated in favor of its own members by referring them for steward positions instead of equally qualified and previously registered nonmembers.
[2] Under the formula, "the overall earnings of all applicants, members and nonmembers, seeking employment through [the] referral system would be divided by the total number of ironworkers who worked out of the hiring hall, taking into account the net earnings of the individual discriminatees during the relevant period." App. to Pet. for Cert. 21a-22a.
[3] The Board prepares a backpay specification after issuance of an unfair labor practice order that awards backpay. The specification shows in detail how backpay is computed and serves to initiate supplemental administrative proceedings by giving notice of the amount allegedly due. See generally 29 CFR §§ 102.52-102.59 (1983).
[4] The analysis was further complicated by the Board's decision to consolidate the backpay specification for the present case with those for four similar cases of discrimination by other New Jersey locals of the International Ironworkers Association.
[5] The court's order stated:

"[A]fter a review of the various orders entered in this matter, and the length of time that elapsed since the entry of the original judgment of this Court, it is ordered that:
"1. Any backpay specifications not made by December 31, 1982, are hereby barred and are not to be considered. See order of court dated December 1, 1982.
"2. Payment in full by the Union of any claims asserted on behalf of [the charging parties] shall be considered compliance with paragraph 1 of this order." App. to Pet. for Cert. 1a-2a.
[6] Such a result is anomalous where there is some suggestion, as in the present case, that the wrongdoing union or employer itself contributed to delay by obstructing the Board's processes. Yet, we must acknowledge that one must be sympathetic to respondent union's loss of patience with what appears to be the Board's serious delay.
[7] This case also differs from Rutter-Rex in that the Court of Appeals here had issued an order that set a deadline for entry of a formal backpay specification. Rutter-Rex recognized the power of the courts of appeals to compel Board action that has been "unreasonably delayed." 396 U. S., at 266, and n. 3. Cf. Silverman v. NLRB, 543 F. 2d 428 (CA2 1976) (order mandating timely completion of backpay proceedings). In the present case, however, the Board complied with the court's deadline. Nor does it appear that the Board, by subsequently amending the specification, came into noncompliance. The Court of Appeals order of December 1, 1982, did not limit in any way the authority of the Board to amend the specifications during the course of backpay proceedings. It was sufficient that the specification initiated these proceedings.