[No. B036249. Second Dist., Div. Seven. May 5, 1989.]

MT. SAN ANTONIO COMMUNITY COLLEGE DISTRICT,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
MT. SAN ANTONIO COMMUNITY COLLEGE FACULTY
ASSOCIATION CTA/NEA, Real Party in Interest.

COUNSEL

Wagner, Sisneros & Wagner and Patrick D. Sisneros for Petitioner.

Christine A. Bologna, John W. Spittler and Andrea L. Biren for Respondent.

Reich, Adell & Crost, Glenn Rothner and John Rubin for Real Party in Interest.

OPINION

NEWMAN, J.*—

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises under the Educational Employment Relations Act (EERA). The Mt. San Antonio Community College Faculty Association (Association) in 1977 filed an unfair practice charge against the Mt. San Antonio Community College District (District). The charge alleged the District reorganization plan, unilaterally implemented, violated the EERA.

Prior to the advent of collective bargaining under the EERA, department chairs at Mt. San Antonio Community College were assigned to perform

---

*Assigned by the Chairperson of the Judicial Council.

administrative duties in connection with the department each chaired. They received certain benefits and payments for carrying out these responsibilities. They were given "release" time, extending from a minimum of 20 percent to a maximum of 100 percent of a teaching load for performance of administrative duties. Each chair received an annual stipend paid on a monthly basis. The amount of release time and the stipend were both determined by the number of instructors and the amount of administrative work in each department. In addition, each chair received a one-time payment equivalent to two weeks' salary at the beginning of each school year as compensation for preparation time.

Because of and concurrent with the commencement of collective bargaining, the District implemented a reorganization plan. The position of division dean was created and classified as supervisory; it was therefore outside the bargaining unit represented by the Association. The dean was to perform at least the managerial and supervisorial duties which were previously performed by the department chairs. The chairs were to continue performing other of their administrative duties. Nonetheless, release time was eliminated; chairs were required to teach full time; the stipend was reduced to a flat sum without regard for department size or remaining administrative functions; and the two-week salary payment for preparation was eliminated.

In response to the reorganization plan, the Association filed with the Public Employment Relations Board (PERB) an unfair practice charge on June 6, 1977. Before filing the charge, the Association attempted to negotiate with the District. On February 23, 1977, the District announced its intent to implement the reorganization plan. On March 23 and April 14, 1977, the District refused Association requests to negotiate with respect to the reorganization plan. On May 18, 1977, the District board of trustees approved the reorganization plan.

The parties negotiated a collective bargaining agreement (CBA), which was ratified on March 18, 1978, and made effective retroactive to July 1, 1977. The CBA covered subjects affected by the reorganization plan. The provision pertaining to department chair stipends, however, was effective in Spring 1978. Before concluding their CBA, the parties entered into a separate but related agreement, entitled Memorandum of Understanding (MOU) on March 3, 1978. This agreement preserved for the Association its legal rights to pursue the unfair practice charge pertaining to the reorganization plan pending before PERB notwithstanding ratification of the CBA. The MOU was for the Association a condition precedent to concluding the CBA. No similar ancillary document was executed by the parties after the first CBA expired and was replaced by successor agreements.

PERB issued a complaint on the June 1977 charge;[1] a hearing was held before an administrative law judge (ALJ) in September 1977; a proposed decision by the ALJ was issued on October 26, 1978. Ultimately, on August 18, 1983, PERB issued its Decision No. 334, finding that failure by the District to negotiate on the subjects of the division dean position, stipend, change in the department chairs employment hours, and transfer of bargaining unit work to nonunit employees constituted violations of EERA provisions, contained in Government Code section 3543.5, subdivision (c), and concurrently section 3543.5 subdivisions (a) and (b).[2] PERB ordered remedial affirmative action.[3] The District did not seek review of PERB's decision and order. On September 12, 1983, the District wrote to PERB advising of its compliance with PERB's posting requirement and on September 20, 1983, served the Association with a copy of this letter. On September 21, 1983, the Association president wrote to the District seeking to negotiate pursuant to the PERB order. On October 31, 1983, the District advised PERB in another compliance letter that it had received from the Association a request to meet and negotiate on the subjects set forth in PERB Decision No. 334, and that a meeting time would be decided upon when the Association had compiled documentation on the matters to be negotiated. The District stated at such unspecified time it would comply with Decision No. 334 by meeting and negotiating on the required subjects. PERB issued a letter to the parties on November 10, 1983, apparently in response to the District's October 31 letter, inviting notification if any party believed further action was necessary, within 10 days; otherwise, no further reporting from the District would be required. Neither party responded to this notice, which did not state that the case was closed. Between October 31, 1983, and July 10, 1984, the Association was still gathering information regarding the reorganization; the parties engaged in casual conversation about, but did not negotiate pursuant to, Decision No. 334 regarding compliance.

---

[1] The charge was denominated case No. LA-CE-133 and culminated in Decision No. 334.

[2] All further statutory references are to the Government Code unless otherwise indicated.

[3] The pertinent portion of PERB Decision No. 334 is as follows: "B. TAKE THE FOLLOWING AFFIRMATIVE ACTIONS DESIGNED TO EFFECTUATE THE POLICIES OF THE ACT:

"1. Upon request of the Association, meet and negotiate with the Association concerning the transferring of unit work, the modification of department chairperson stipends, and the change of hours of department chairpersons.

"2. Pay to the affected employees the difference in wages between that which they earned and that which they should have earned in the absence of the employer's unilateral action, minus any mitigation, from May 18, 1977 until the occurrence of the earliest of the following conditions: (a) the date the District negotiates an agreement with the Association concerning the issues raised by this Decision; (b) a bona fide impasse in bargaining occurs; or (c) failure of the Association to request bargaining within 5 days of this Decision."

On July 13, 1984, the newly elected Association president advised the District the Association had sufficient information for negotiations. He was requested to put the request in writing, and did so on October 2, 1984. The District responded on October 10, 1984, refusing to negotiate. Both in discussion and by letter on November 5, 1984, the Association reminded the District it had committed to PERB on November 10, 1983, that it would negotiate on demand. On February 25, 1985, the parties met; the District sought clarification of the Association's negotiation goals; the Association indicated it wanted to recover losses the department chairs sustained, but did not describe precisely what was sought. On April 16, 1985, the Association wrote to the District board of trustees requesting negotiations; on May 28, 1985, the trustees refused.

The Association filed an unfair practice charge on June 6, 1985, alleging that on October 10, 1984, the District repudiated its agreement to negotiate. On August 2, 1985, PERB's general counsel advised the Association the unfair charge was untimely, but that proper recourse was a compliance proceeding. The Association filed its petition seeking compliance with Decision No. 334 on August 7, 1985. Compliance proceedings commenced in January 1986.

PERB issued its Decision No. 691, the subject of the instant petition for writ of review and cross-petition for enforcement, on June 30, 1988. PERB awarded backpay but found the District's liability with respect to the stipends, the two-week preparation period, and release time to be limited to the duration of the first CBA between the parties, July 1, 1977, through June 30, 1979. PERB based its decision on its finding that although the District initially refused to negotiate about the reorganization plan, it eventually did bargain about stipends, preparation time, and release time, all prior to the issuance by the ALJ of the proposed decision in Case No. LA-CE-133 (Decision No. 334) on October 26, 1978. While PERB precedent required cessation of backpay liability if a subsequent CBA addressed the "basic subject matter" in an unfair practice proceeding (*Rio Hondo Community College District* (June 30, 1986) PERB Decision No. 279b; *Pittsburgh Unified School District* (Apr. 2, 1984) PERB Decision No. 318a), PERB found the District waived any tolling of its liability in the contemporaneous MOU. Since the MOU applied only to the 1977-1979 CBA, and subsequent agreements neither refer to the MOU nor contain similar terms, it did not operate to preserve any backpay claims for the duration of subsequent CBA's, notwithstanding the pendency of the unfair practice charge until Decision No. 334 was issued. PERB rejected the District's claim of a laches bar and refused to adopt an equitable statute of limitations precluding compliance proceedings. PERB concluded the only prejudice shown by

the District due to delay was the running of interest, which it therefore tolled from and after the date the District advised PERB it had posted Decision No. 334, September 20, 1983. The District's petition for writ of review and PERB's cross-petition for enforcement followed.

## ISSUES FOR REVIEW

1. Should there be a statute of limitations on the activation of compliance proceedings?

2. If there is no statute of limitations on the activation of compliance proceedings, has real party in interest delayed too long in activating compliance proceedings in this case?

3. Does the MOU dated March 3, 1978, waive the tolling of liability during the duration of the 1977-1979 collective bargaining agreement?

4. Has PERB unreasonably delayed in adjudicating this matter?

## DISCUSSION

### I

We begin by reiterating the standard of review for PERB decisions. Courts are instructed by the Legislature to defer to PERB's construction of a statute that it is charged with applying: "PERB has a specialized and focused task—'to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by the [EERA].' (Citations omitted.) As such, PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' (Citations omitted.) '[T]he relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference' (citations omitted) and PERB's interpretation will generally be followed unless it is clearly erroneous (citations omitted)." (*Banning Teachers Assn.* v. *Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 [244 Cal.Rptr. 671, 750 P.2d 313].)

With respect to factual findings made by PERB, California courts have adhered to section 3542, subdivision (c), which provides that such findings,

including findings of ultimate fact, are conclusive if supported by substantial evidence in the record considered as a whole. (*Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 617 [224 Cal.Rptr. 631, 715 P.2d 590]; *San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850 [191 Cal.Rptr. 800, 663 P.2d 523].)

## II

 This dispute is about whether compliance proceedings for a prior PERB order were initiated and completed in a timely manner. Neither the EERA nor any regulation adopted by PERB explicitly governs compliance procedures. The District argues that the six-month time limit pertaining to initiating unfair practice charges provides the closest analogy and ought to govern; since the Association neither requested nor did PERB require compliance within six months of issuance of Order No. 334, it was therefore too late to enforce compliance. Moreover, because the issues resulting in PERB Order No. 334 were the subjects of negotiations in the 1977-1979 and successor CBA's, any liability ceased. We disagree.

PERB made two factual findings pertinent to this review proceeding. First, it found that the delay in initiation and conclusion of compliance proceedings neither caused nor resulted in prejudice to petitioner other than the accrual of interest. Second, PERB found that the MOU between the District and the Association, which was ancillary to and entered into contemporaneously with the 1977-1979 CBA, waived the tolling of liability for the term of the CBA. We conclude each finding is supported by substantial evidence and is therefore entitled to deference as conclusive.[4]

Witnesses who testified on behalf of the District had no difficulty recalling events; indeed the District claims no diminution of memories, but only the potential for such diminution. Moreover, no other claim of prejudice is advanced. The District argues that the funds in question belong to the public but presented neither persuasive evidence nor argument below, nor argument on appeal, as to how the public was prejudiced.

The parties did agree that the Association was entitled to pursue relief through its June 7, 1977, unfair practice charge notwithstanding that the

---

[4]In considering whether substantial evidence supports factual findings made by PERB we observe that the District has failed to refer to evidence in support of its contentions which failure may be regarded as a waiver of its claims in this regard. (*Agricultural Labor Relations Bd.* v. *Tex-Cal Land Management, Inc.* (1985) 165 Cal.App.3d 429, 437 [211 Cal.Rptr. 475]; *Butte View Farms* v. *Agricultural Labor Relations Bd.* (1979) 95 Cal.App.3d 961 [157 Cal.Rptr. 476].)

"basic subject matter" of the charge was negotiated about and incorporated in the 1977-1979 CBA. The MOU is broadly drafted and expressly reserves all the Association's rights to pursue the underlying unfair practice charge. Witnesses on behalf of both the District and the Association testified that but for the agreement memorialized in the MOU there would not have been that first CBA. Moreover, Association witnesses testified that the CBA was subject to the MOU, that its intent was to waive any tolling of liability even beyond the 1977-1979 CBA, that it was intended to presume the broadest possible remedy from PERB, and the District's bargaining team spokesman participated in negotiating and providing language for the MOU.

## III

■ " 'Statutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded and witnesses have disappeared.' " (*Wood* v. *Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755], quoting from *Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348 [88 L.Ed. 788, 792, 64 S.Ct. 582].)

■ Like enforcement of a judgment, compliance follows resolution of a dispute. Compliance procedures, in this context, follow determination of the facts and issues raised by an unfair practice charge. ■ The District has neither presented reasons nor cited authority for its proposition that compliance proceedings should be governed by a six-month limitations period. We decline to engraft such a requirement on PERB compliance procedures.[5]

■ While a statute of limitations may not be created by judicial fiat, an analogous limitations period may provide guidance in deciding whether laches bars a claim. Laches is an equitable defense which requires both unreasonable delay and prejudice resulting from the delay. The party asserting and seeking to benefit from the laches bar bears the burden of proof on these factors. (*Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258]; *California Teachers Assn.* v. *Governing Board* (1987) 195 Cal.App.3d 285, 295-296 [240 Cal.Rptr. 549]; *Santa Monica Mun. Employees Assn.* v. *City of Santa Monica* (1987) 191 Cal.App.3d 1538 [237 Cal.Rptr. 185].)

---

[5] In federal labor law proceedings, this issue would not arise because the statutory and regulatory scheme places responsibility for *initiating* compliance with its remedial orders on the NLRB rather than on the victorious charging party. (29 U.S.C. §§ 160(a), 160(c) & 160(e), 29 C.F.R. §§ 101.10-101.14, 101.16.)

 The District has not met that burden. While the ALJ found unreasonable delay in commencing compliance proceedings by the Association, she affirmatively found the District had presented no evidence of prejudice. Our review of the administrative record fails to disclose any. "[I]n the absence of manifest injustice or a lack of substantial support in the evidence its [the trial court's] determination will be sustained. [Citations.]" (*Miller* v. *Eisenhower Medical Center, supra,* 27 Cal.3d at p. 624.) Thus, the District fails the test for successfully asserting the bar of laches, with but one exception, which we presently discuss. Because interest was accruing on the backpay award during the delay of the Association in seeking and PERB in ordering compliance, PERB found prejudice. However, PERB responded directly to its finding by tolling accrual of interest on its backpay award, thereby eliminating this "last vestige of prejudice" (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 360 [82 Cal.Rptr. 337, 461 P.2d 617].)

## IV

 PERB's remedial powers are broad; it is empowered by sections 3541.3, subdivision (i), 3541.3, subdivision (n) and 3541.5, subdivision (c) to take action and make determinations as are necessary to effectuate the policies of the EERA. Long ago the United States Supreme Court described remedial determinations of the National Labor Relations Board (NLRB): "Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy." (*Phelps Dodge Corp.* v. *Labor Board* (1941) 313 U.S. 177, 194 [85 L.Ed. 1271, 1283, 61 S.Ct. 845, 133 A.L.R. 1217].)[6]

 In analogous situations, federal courts have concluded that even extraordinary delay in initiating and concluding compliance proceedings does not raise a laches bar to recovery. (*N.L.R.B.* v. *Pool Mfg. Co.* (1950) 339 U.S. 577 [94 L.Ed. 1077, 70 S.Ct. 830]; *Nabors* v. *N.L.R.B.* (5th Cir. 1963) 323 F.2d 686, cert. denied 376 U.S. 911 [11 L.Ed.2d 609, 84 S.Ct. 666]; see also *National Labor Relations Board* v. *Andrew Jergens Co.* (9th Cir. 1949) 175 F.2d 130, cert. denied 338 U.S. 827 [94 L.Ed. 503, 70 S.Ct. 76].) Notably, in *Bagel Bakers Council of Greater N. Y.* v. *N.L.R.B.* (2d Cir.

---

[6] The grant of remedial powers in the EERA, section 3541.5, subdivision (c), is parallel to the language of section 10c of the National Labor Relations Act (29 U.S.C. § 160(c)). Thus, it is appropriate to examine NLRB precedent for guidance in interpretation of similar language in the EERA. (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 851 [187 Cal.Rptr. 432, 654 P.2d 202].)

1977) 555 F.2d 304, 306, the Court of Appeals enforced a backpay judgment including interest despite a claim of NLRB delay during the 10-year life of the case.

Indeed, the United States Supreme Court has held that "the [NLRB] is not required to place the consequences of its own delay, even if inordinate, upon wronged employees to the benefit of wrongdoing employers. [Citation.]" (*N.L.R.B.* v. *Rutter-Rex Mfg. Co.* (1969) 396 U.S. 258, 265 [24 L.Ed.2d 405, 411, 90 S.Ct. 417].) Moreover, the Supreme Court refused to let stand a modification of an NLRB backpay order based on board delay alone in a case where the delay in making a backpay specification lasted from May 1973 until December 1982. (*NLRB* v. *Ironworkers* (1983) 466 U.S. 720 [80 L.Ed.2d 715, 104 S.Ct. 2081].) ▮▮▮ As the discretionary remedial authority of the NLRB is subject only to limited judicial review (*Fibreboard Corp.* v. *Labor Board* (1964) 379 U.S. 203, 216 [13 L.Ed.2d 233, 241-242, 85 S.Ct. 398, 6 A.L.R.3d 1130]), so too is such power in analogous state agencies. (*Jasmine Vineyards, Inc.* v. *Agricultural Labor Relations Bd.* (1980) 113 Cal.App.3d 968, 982 [170 Cal.Rptr. 510].)

▮▮▮ Section 3542, subdivision (d) places ultimate responsibility on PERB, not the charging party, to assure compliance with its remedial order. PERB is authorized by sections 3541.3, subdivisions (i) and (n) to seek compliance with its own orders and by section 3542, subdivision (d) to seek judicial enforcement of its orders. ▮▮▮ Dismissal of the compliance petition would serve no purpose of a statute of limitations; it would frustrate the purposes of the EERA by preventing PERB from securing compliance with its own orders. The District did not appeal PERB's 1983 backpay order in Decision No. 334, and may not now collaterally attack that exercise of PERB's discretion in the guise of seeking dismissal of the compliance case. PERB has exercised its discretion reasonably to remedy both the wrong done to the employees in the first instance, and any prejudice caused by the Association's delay in initiating and PERB's own delay in concluding compliance proceedings, by limiting the amount of interest payable on its backpay award.

## DISPOSITION

Pursuant to section 3542, subdivision (c), this court has jurisdiction to enforce, modify, or set aside PERB's order. Because a backpay award is a reparation order designed to restore the status quo which would have prevailed but for the wrongful act, it is dismissal of the compliance action that would contravene public policy and legislative intent. Enforcement of Decision No. 691, on the other hand, will effectuate the policies of the EERA.

Consequently we deny the petition for writ of review and grant the cross-petition for enforcement.

Johnson, Acting P. J., and Woods (Fred), J., concurred.