[No. B082927. Second Dist., Div. Two. Sept. 26, 1995.]

HOSNI NAGIB FAHMY, Plaintiff and Respondent, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, and Rosa M. Mosley, Deputy Attorney General, for Defendant and Appellant.

Rosner, Owens & Nunziato, David L. Rosner and Phil J. Montoya, Jr., for Plaintiff and Respondent.

## OPINION

**BOREN, P. J.**—A patient died from the complications of an undiagnosed ectopic pregnancy after seeking medical care from respondent Hosni Nagib Fahmy, M.D. The Medical Board of California, Division of Medical Quality (the Medical Board) took disciplinary action against Fahmy as a result of the patient's death. The discipline imposed by the Medical Board was overturned by the trial court on a laches theory. The court concluded that the Medical Board, by investigating the case for three years and three months before instituting proceedings against Fahmy's medical license, lost jurisdiction to act because it delayed unreasonably "as a matter of law." We reverse.

### FACTS

On May 8, 1986, a 33-year-old patient named Claudia Caventou presented herself as a first-time patient at the medical clinic of respondent Fahmy. She

reported that she was pregnant, and complained of severe abdominal pain, vaginal bleeding, shortness of breath and nausea. Fahmy's notes indicate his belief that Caventou might be suffering a miscarriage, and his awareness that he needed to rule out the possibility of an ectopic pregnancy, ovarian cyst, or ulcer.

Without performing a blood test to determine Caventou's hemoglobin level—which would have revealed substantial blood loss—Fahmy performed a suction curettage with the idea of sending the patient to the hospital afterward to check for an ectopic pregnancy or cyst. The patient was conscious, alert and ambulatory after the intrauterine procedure. About 20 minutes later, she collapsed in Fahmy's office and was transported to a hospital. Surgery was performed, but physicians were unable to save her due to an excessive loss of blood. Approximately one hour passed from the time Fahmy first examined her to the time she collapsed.

The Medical Board learned of Caventou's death on June 22, 1989, when Fahmy's malpractice insurer sent out a notice of settlement as required by law. An investigation followed. An accusation was filed against Fahmy by the Medical Board on October 20, 1992. Following a disciplinary hearing, the Medical Board revoked Fahmy's license in July of 1993 on the grounds he committed gross negligence in his treatment of the decedent. The findings underlying the Medical Board's determination were that (1) Fahmy "failed to give Caventou a blood test to determine her hemoglobin level which was essential to detect her substantial blood loss and which would have in light of her multiple symptoms, alerted him to the appropriate diagnosis of ectopic pregnancy," and (2) "At the time of respondent's examination of Caventou, the performance of curettage surgery was not indicated considering the entire syndrome of impending cardio-vascular failure."

In its decision, the Medical Board rejected Fahmy's claim of laches, finding that there was no showing of prejudice because the medical records affecting the outcome of Fahmy's case were in his possession and because his recollection of the incident was memorialized in a deposition taken in 1987. The Medical Board stayed the revocation of Fahmy's license and placed him on probation for five years. It ordered him to take a course relating to the complications of pregnancy and to pass an oral examination in the field of obstetrics and gynecology.

Fahmy filed a petition for a writ of mandamus on October 12, 1993. He sought to have the Medical Board's administrative decision overturned on the grounds that (1) the revocation decision was not supported by the

findings or evidence, (2) there was insufficient evidence establishing that his conduct fell below the relevant standard of care, and (3) the Medical Board's delay in initiating proceedings against him denied him the right to a fair trial.

The trial court granted the writ on February 18, 1994. The court listed the factual bases for granting the writ. Specifically, the factual predicate cited by the court was that (1) the incident giving rise to the charges arose on May 8, 1986, (2) the Medical Board learned of the incident on June 22, 1989, and (3) the Medical Board's action against Fahmy was filed on October 20, 1992. Based on these undisputed facts, the court concluded, "The delay in filing the Accusation against petitioner, at least, over three (3) years after knowledge of the incident is unreasonable as a matter of law. The effect of the delay is to shift the burden to the [Medical Board] to prove that its delay was reasonable and the petitioner was not prejudiced thereby. In order to excuse its delay, the [Medical Board] must show exceptional circumstances prevented earlier action." The court determined that the unreasonable delay meant that the Medical Board proceeded without jurisdiction, that Fahmy was denied a fair hearing, and that there was laches.

## DISCUSSION

■ The trial court decided the writ as a matter of law. The facts forming the basis of the trial court's ruling, which in this instance are the dates upon which certain specified events occurred, are not in dispute. We are not bound by the trial court's legal determinations, and must arrive at our own legal conclusions on appeal. (*Karpe* v. *Teachers' Ret irement Bd.* (1976) 64 Cal.App.3d 868, 870 [135 Cal.Rptr. 21]; *Wilson* v. *State Personnel Bd.* (1976) 58 Cal.App.3d 865, 870 [130 Cal.Rptr. 292].)

■ The parties agree that no statute of limitations applies to physician discipline proceedings. Nevertheless, Fahmy cites the rule that ". . . the trial court has the inherent power to dismiss administrative proceedings brought to revoke a state-issued license where there has been an unreasonable delay between the discovery of the facts constituting the reason for the revocation and the commencement of revocation proceedings, and where the licensee has been prejudiced by the delay." (*Gates* v. *Department of Motor Vehicles* (1979) 94 Cal.App.3d 921, 925 [156 Cal.Rptr. 791].)

The court in *Gates* found that the licensee, an automobile dismantler, was prejudiced and deprived of a fair administrative hearing because ". . . the

memories of witnesses had diminished to a point where respondent could not engage in effective cross-examination." (94 Cal.App.3d at pp. 925-926.)[1] This was the result of an unexplained 16-month delay between discovery of the facts and the filing of license revocation charges.

The *Gates* opinion cites several Supreme Court holdings in State Bar disciplinary proceedings which "suggest[] that dismissal would be warranted *if a party established that he was prejudiced* by an unreasonable delay in initiating charges against him." (94 Cal.App.3d at p. 925, italics added.) Additional authority similarly emphasizes that the burden of proving prejudice due to delay rests upon the party asserting the theory: "Laches is an equitable defense which requires both unreasonable delay and prejudice resulting from the delay. The party asserting and seeking to benefit from the laches bar bears the burden of proof on these factors." (*Mt. San Antonio Community College Dist.* v. *Public Employment Relations Bd.* (1989) 210 Cal.App.3d 178, 188 [258 Cal.Rptr. 302].) Thus, it is not enough for a tribunal to simply find that a delay was, by virtue of the passage of time, unreasonable "as a matter of law." That finding *must* be supported by substantial evidence of prejudice. (*Id.* at p. 189; see also *Brown* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1159 [213 Cal.Rptr. 53] [" '[d]elay is not a bar unless it works to the *disadvantage or prejudice* of other parties.' "].)

In this case, the trial court did not find that Fahmy was demonstrably prejudiced by the Medical Board's delay. Rather, the court inexplicably selected three years as the period after which delay in bringing charges becomes unreasonable as a matter of law, then shifted to the Medical Board the burden of justifying the delay and proving Fahmy was not prejudiced.

The trial court's determination that a three-year delay is unreasonable as a matter of law flies in the face of the Legislature's informed refusal to impose a statute of limitations on physician disciplinary proceedings. The Legislature has seen fit to impose a limitation on actions in other administrative disciplinary settings. (See, e.g., Gov. Code, § 19635, which places a three-year statute of limitations on administrative actions against state employees for violation of any civil service law, or for fraud, embezzlement, or

---

[1] The trial court in *Gates* found, " 'The delay from investigation to accusation to hearing was such that the DMV witnesses had no recollection of many of the events they testified to and were simply reading their records. Likewise, petitioner [Gates] and his wife had difficulty recalling the events relating to the alleged violations out of all the cars and records handled by them two years before. This unreasonable delay in commencing the proceedings made effective cross-examination of the DMV investigators impossible.' " (94 Cal.App.3d at p. 924.)

falsification of records.) ■ In fact, when the Legislature passed the Medical Judicial Procedure Improvement Act a few years ago (Stats. 1990, ch. 1597, § 39, p. 7702, its statement of legislative intent evinced a concern for "protecting the people of California," *not* for protecting the right of incompetent doctors to retain their licenses.[2] The new law noticeably lacks a statute of limitations. The Legislature is presumably aware that there are statutes limiting the right to bring action in other, arguably analogous situations.[3] Yet the Legislature chose not to impose any limitation on the Medical Board in this precise situation.

It is important to remember that "a statute of limitations may not be created by judicial fiat" (*Mt. San Antonio Community College Dist.* v. *Public Employment Relations Bd.*, *supra*, 210 Cal.App.3d at p. 188) and that limitations periods "are products of legislative authority and control." (*Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 715 [132 Cal.Rptr. 536].) By focusing solely on the passage of time, and not on the issue of disadvantage and prejudice, a court risks imposing a de facto—and impermissible—statute of limitations in a situation where the Legislature chose not to create a limitation on actions. Even inordinately long delays in taking administrative action have been judicially allowed. (See *NLRB* v. *Ironworkers* (1984) 466 U.S. 720 [80 L.Ed.2d 715, 104 S.Ct. 2081], where the delay in taking administrative action lasted from 1978 until 1982, and related to wrongdoing which occurred from 1972 onward.) There is without a doubt a realization on the part of the Legislature that administrative agencies such as the Medical Board take action for the public welfare rather than for their own financial gain, and should not be hampered by time limits in the execution of their duty to take protective remedial action. That is particularly true in the case of the Medical Board, which is charged with protecting the lives and health of the citizenry from incompetent or grossly negligent medical practitioners. It is apparent that the Legislature wishes to have the Medical Board protect California patients from physicians who are incapable of providing appropriate services in life or death situations, regardless of how long it takes the Medical Board to act.[4]

---

[2]"The 1989-90 Regular Session of the Legislature declares that the physician discipline system administered by the board's Division of Medical Quality is inadequate to protect the health, safety, and welfare of the people of California against incompetent or impaired physicians." (Stats. 1990, ch. 1597, § 1, p. 7683.)

[3]Fahmy analogizes the Medical Board's disciplinary action to a private medical malpractice suit, for which there is a three-year statute of limitations. (Code Civ. Proc., § 340.5.) He also analogizes this proceeding to a criminal prosecution for involuntary manslaughter, for which there is a three-year statute of limitations. (Pen. Code, §§ 192, 193, 801.)

[4]In a somewhat different context, which involved the timeliness of disciplinary action by a state agency, our Supreme Court recently acknowledged, "[W]e cannot assume that the

Fahmy and the trial court relied on the case of *Brown* v. *State Personnel Bd.*, *supra*, 166 Cal.App.3d 1151, for the proposition that an administrative delay can be unreasonable as a matter of law, which in turn shifts the burden to the agency of explaining the delay and disproving prejudice. There, a state university professor was dismissed from his job after students complained he was sexually harassing them. The appellate court found a strong analogy between the professor's position with the state and the position of other state employees who were subject to a three-year statute of limitations if they were to be disciplined for instances of misconduct. Accordingly, the court applied the three-year statute of limitations by analogy to the professor's claim of laches, and shifted the burden of proving laches to the agency.

We find the *Brown* case inapposite in the context of a license revocation proceeding.[5] The purpose of a license revocation proceeding is to protect the public from incompetent practitioners by eliminating those individuals from the roster of state-licensed professionals. The license revocation proceeding is civil in nature, not criminal. By contrast, the purpose of a criminal proceeding is to punish someone for a specific act of wrongdoing, and the purpose of a civil proceeding for medical malpractice is to compensate financially for a particular loss occasioned by negligence. Neither a criminal prosecution nor a malpractice action serves the purpose intended by license revocation proceedings. "The purpose of such a proceeding is not to punish but to afford protection to the public upon the rationale that respect and confidence of the public is merited by eliminating from the ranks of practitioners those who are dishonest, immoral, disreputable, or incompetent." (*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525]; *Lam* v. *Bureau of Security & Investigative Services*, *supra*, 34 Cal.App.4th at p. 38.) ▮ Thus, it was not appropriate for the trial court to "borrow" a statute of limitations by analogizing this license revocation

---

Legislature intended to penalize state agencies and the people of this state by mandating reinstatement of an incompetent or untrustworthy employee solely because the Board failed to render a timely decision in the employee's appeal. The statute clearly contemplates review of the adverse action by the court, not reinstatement of an employee whose conduct may have proven the employee unfit for public service or for the position currently held, or otherwise justifies punitive action." (*California Correctional Peace Officers Assn.* v. *State Personnel Bd.* (1995) 10 Cal.4th 1133, 1150 [43 Cal.Rptr.2d 693, 899 P.2d 79].)

[5]We note that in the 10 years since *Brown* was decided, the section of the opinion applying a statute of limitations to a laches defense in an administrative setting has never been followed, except by the same court in the recent case of *Lam* v. *Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29 [40 Cal.Rptr.2d 137]. Even then, the court in *Lam* refused to apply a statute of limitations by analogy to the laches theory asserted by a locksmith who was having his license revoked after using his professional skill to break into someone's apartment.

proceeding to a medical malpractice or manslaughter proceeding, nor to shift the burden of disproving laches to the Medical Board. (*Lam, supra,* at p. 38.)

■ We must now determine whether Fahmy produced sufficient evidence of prejudice to justify the dismissal of disciplinary charges against him. In his trial brief below, Fahmy made no argument or showing whatsoever that he was prejudiced by the Medical Board's delay. In his appellate brief, Fahmy asserts that "it is impossible to identify all evidence which has been lost or is otherwise unavailable and which would have aided [him] in defending the [a]ccusation against him." He specifically complains that Caventou's medical records relating to her prior treatment at Harbor-UCLA Medical Center on May 6, 1986, were incomplete and the names of the physicians who treated her there were unknown. He suggests that this compromised his ability to prove that other physicians contributed to Caventou's death.

The hearing exhibits reveal that the custodian of medical records at Harbor-UCLA Medical Center provided the parties with "all the records" relating to UCLA's treatment of Caventou. Even if this disciplinary action had been brought earlier, there is no reason to believe there would have been any more records than were produced at the hearing in 1993. Assuming that some of the records from UCLA were missing, their absence did not affect the outcome of this case. The physicians at UCLA may have been negligent in failing to diagnose the ectopic pregnancy on May 6. Nevertheless, this does not excuse Fahmy's failure to assess Caventou's hemoglobin levels on May 8, when an ectopic pregnancy was an acknowledged possibility, and she was bleeding and in severe pain. Nor does it excuse Fahmy's performance of a suction curettage when the patient was exhibiting signs of "impending cardio-vascular failure." Thus, the records or witnesses from UCLA have negligible relevance to Fahmy's conduct on the day of Caventou's death.

No contention is made that any of the witnesses, including Fahmy, were unable to testify effectively or be cross-examined at the administrative hearing due to the passage of time. (Cf. *Gates* v. *Department of Motor Vehicles, supra,* 94 Cal.App.3d 921, 924.) Moreover, Fahmy's recollection of the incident was memorialized in a deposition taken in 1987, the year after Caventou's death. In short, there is no colorable showing of prejudice to support a finding of laches.

## DISPOSITION

The judgment is reversed. The trial court is directed to issue a new order denying the writ, and to enter judgment in favor of appellant Medical Board of California. Costs, if any, to the prevailing party.

Nott, J., and Brandlin, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied December 13, 1995.

---

*Judge of the Municipal Court for the South Bay Judicial District sitting under assignment by the Chairperson of the Judicial Council.