In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-3314, 10-3518

BROTHERHOOD OF LOCOMOTIVE
ENGINEERS AND TRAINMEN,

*Petitioner-Appellee/
Cross-Appellant*,

*v.*

UNION PACIFIC RAILROAD CO.,

*Respondent-Appellant/
Cross-Appellee*.

Appeals from the United States District Court
for the Southern District of Illinois.
No. 3:08-cv-00828-MJR-CJP—**Michael J. Reagan**, *Judge*.

ARGUED JANUARY 9, 2013—DECIDED FEBRUARY 13, 2013

Before POSNER, FLAUM, and WILLIAMS, *Circuit Judges*.

POSNER, *Circuit Judge*. Employment disputes involving collective bargaining agreements in the railroad industry are generally resolved by an arbitral body called the National Railroad Adjustment Board. Before taking a grievance to the Adjustment Board, the em-

ployee or his union must exhaust the employer's internal grievance procedures. 45 U.S.C. § 153 First (i). But if those procedures fail to resolve the dispute, either party can refer it to the Board by submitting a petition with "a full statement of the facts and all supporting data bearing upon the disputes." *Id*. And that is what occurred in this case. Because the case involves a train engineer, it was referred to the Board's first division, composed of four members designated by railroads and four designated by unions. § 153 First (h). If the members deadlock, as they did in this case, they select a neutral referee to resolve the dispute; and that was done. § 153 First (l). The loser can seek review in the district court on the basis of the record compiled in the proceeding before the Board. § 153 First (q). But the district court may set aside the Board's order only "for failure of the division to comply with the requirements of [the Railway Labor Act]" or "to conform, or confine itself, to matters within the scope of the division's jurisdiction," or "for fraud or corruption by a member of the division." *Id*.

The Union Pacific Railroad had fired a locomotive engineer named Narron. The union filed a grievance, which eventually came before the Board, and the Board ordered the railroad to reinstate Narron with back pay but authorized the railroad to offset the back pay by any earnings that he had obtained between his firing and his reinstatement (we'll call this period the "layoff period"). The union wasn't happy with the earnings-offset provision and filed a petition in the district court challenging that part of the award. Oddly,

neither party admits to knowing whether Narron earned any money during the layoff period. The district judge was very disturbed by this gap in the record and decided that it deprived him of jurisdiction, since, he reasoned, if Narron hadn't earned anything, the union's challenge to the earnings-offset provision in the Board's order was academic. He remanded the case to the Board to determine whether Narron had had any earnings. (The docket sheet says the court dismissed the case, but that's inaccurate.) The judge also ordered the earnings-offset provision of the Board's order vacated. He didn't explain that part of his decision.

Both parties have appealed. The railroad wants us to reverse the part of the district court's order that vacates the earnings-offset provision and to instruct the district court, rather than the Board, to determine whether Narron had any earnings. The union wants us to reverse the part of the order that directs the Board to make that determination and also asks us either to invalidate the earnings-offset provision or tell the district court to determine its validity in the first instance.

There are questions about our jurisdiction over both appeals, as well as about the district court's jurisdiction. Our *appellate* jurisdiction (the reason for the emphasis will appear) depends on the district court's order being a final judgment and therefore appealable under 28 U.S.C. § 1291. The Federal Arbitration Act authorizes interlocutory appeals from orders vacating arbitration awards, 9 U.S.C. § 16(a)(1)(E), but there is no corresponding provision in the Railway Labor Act. The

district judge's order appears to envisage further proceedings before him after the Board determines Narron's earnings if any during his layoff period. That makes the order nonfinal—an order is final when the court or other body that issued it considers itself finished with the case—and therefore not appealable. "If the district court finds that the decision was erroneous and enters a judgment wrapping up the litigation, that decision is appealable even if extrajudicial proceedings [in this case, proceedings before the Adjustment Board] lie ahead; but if the court postpones adjudication until after additional evidence has been analyzed, then it has not made a final decision." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 979 (7th Cir. 1999).

We say the district court's order "appears to" rather than "does" envisage further court proceedings because we don't know why the judge vacated the earnings-offset provision—a provision of an award that he thought he had no jurisdiction to review. Our guess is that he thought the Board had acted prematurely in ordering an earnings offset without determining whether Narron had earned anything during the layoff period. This implies that if the Board determined that he had, it would reinstate its award of back pay but specify the amount after subtracting his earnings during the layoff period, and the union's challenge to the deduction would then be ripe for consideration by the district court. If this understanding of the district judge's thinking is correct, his order is not final, because it contemplates a further proceeding in the district court

should Narron be determined by the Board to have had any earnings during his layoff period. The further judicial proceeding would be a proceeding to determine the validity of the earnings-offset provision in the Board's order.

We could remand the case to the district judge for an explanation of what he was thinking in vacating the provision, but that would extend the litigation unnecessarily; for it is obvious that the order vacating the provision exceeded his authority, and such an error can be corrected by mandamus, and should be to move the litigation along. Although no formal petition for mandamus has been filed, we can treat the notice of appeal as a petition for mandamus; at the oral argument the railroad agreed that this is an appropriate case for mandamus.

Of course mandamus must not be used as a form of interlocutory appeal. That would vitiate the final-decision rule of section 1291. But the historic and still a vital function of mandamus is to confine a judge or other official to his jurisdiction, *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 351-52 (1976), overruled on other grounds in *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-15 (1996); *In re U.S. Brass Corp.*, 110 F.3d 1261, 1266 (7th Cir. 1997), and the judge exceeded his jurisdiction in this case. Remember that the Railway Labor Act entitled him to vacate the Board's award on only three grounds—the Board (more precisely the division of the Board that had handled the case) hadn't complied with the statute, or had exceeded its jurisdiction, or a

member of the Board had committed fraud or corruption. The judge mentioned none of these grounds, and anyway none of them is applicable to the Board's not having determined Narron's earnings.

So we vacate the striking of the earnings-offset provision of the award, and that leaves us with the district court's order remanding to the Board to determine whether Narron had earned any money during the layoff period. Since the order contemplates the possible return of the case to the district court if he's found to have had earnings, we are still faced with an unappealable because nonfinal district court order. But that order, too, exceeded the district court's jurisdiction and requires correction by mandamus. For it gratuitously and with no basis in law disrupts the arbitration process of the National Railway Adjustment Board. Both parties tell us that in an employment dispute of the kind involved in this case, the Board's award (in this case reinstatement with back pay) is always made without reference to whether the employee had earnings during the layoff period. The earnings (if any) are not even part of the record before the Board. The reason for the omission, the parties tell us, is to expedite the arbitral proceeding. All that the Board decides is whether the employee is entitled to reinstatement with back pay; if it decides in his favor, the determination of the amount of back pay is left for the parties to work out.

If they can't work it out they can go back to the Board. 45 U.S.C. § 153 First (m) ("in case a dispute arises involving an interpretation of the award, the division of

the Board upon request of either party shall interpret the award in the light of the dispute"); see, e.g., *United Transportation Union v. Southern Pacific Transportation Co.*, 529 F.2d 691 (5th Cir. 1976). (Alternatively the dispute can be resolved by the district court in an enforcement action under 45 U.S.C. § 153 First (p), but only if the award "can be clarified by reference to extrinsic evidence not involving the special expertise of the board." 529 F.2d at 693.) Apparently the parties usually can work it out by themselves, and this enables the Board to simplify and expedite the arbitration by stopping short of determining the actual back pay due. The analogy is to declaratory-judgment procedure. "The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings*." Berger v. Xerox Corp. Retirement Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003). Similarly, the Adjustment Board's award declares that the employee is entitled to offset earnings against back pay and leaves the parties to negotiate the net award.

Although no one is questioning the legality of the Board's practice, the district judge in effect has ordered it changed by requiring that the existence of earnings during the layoff period be determined before the Board's order can be judicially reviewed. If the judge's order stands, no longer will parties to disputes arbitrable by the National Railway Adjustment Board be able to postpone the resolution of disputes concerning the amount of a worker's net lost income until after the

Board's order has been issued and, if challenged in court, upheld.

A court is not authorized to change a practice of an administrative agency if the legality of the practice is unchallenged. The Adjustment Board's practice of deferring the calculation of the net back pay due isn't even unusual; it's the practice of the National Labor Relations Board as well, and has been upheld. See *NLRB v. International Association of Bridge, Structural & Ornamental Ironworkers, Local 480, AFL-CIO*, 466 U.S. 720, 725 (1984) (per curiam); *U.S. Can Co. v. NLRB*, 254 F.3d 626, 628 (7th Cir. 2001). Asked in the ironworkers case "whether the Court of Appeals may modify an award of backpay by the National Labor Relations Board on the grounds that the Board failed promptly to specify the amounts of the award," 466 U.S. at 721, the Court held that the court of appeals could not do that, because it would "abridg[e] procedures lawfully established by the Board for determining the amount of backpay"— namely ordering back pay without specifying the amount. *Id.* at 725. That case differs from ours because the determination of the amount of back pay was to be made by the agency itself rather than negotiated by the parties. The Labor Board had found liability for back pay but had dawdled in calculating the amount due each class member, and the court of appeals stepped in to make the allocation and the Supreme Court reversed that intervention. The ruling principle rules this case as well: an agency is permitted to divide its proceedings between entitlement to relief and amount of relief (a parallel to the common judicial practice of

bifurcating liability and damages) rather than having to do both in a single proceeding.

Another route to concluding that entitlement and amount can be distinguished is that a dispute between union and railroad over the propriety of an earnings-offset provision in an arbitration award does not depend on whether a particular employee had such earnings. All workers whom the union represents—and therefore the union itself—are better off financially if a reinstated worker is allowed to keep, on top of the back pay awarded him, any earnings he obtained from substitute employment during his layoff period. Narron is not even a party to the case; whether *he* gets to keep earnings that he obtained during his layoff period is a minor facet of the parties' dispute.

So the district court exceeded its authority in dismissing the petition to review the Board's award, and we must order the court to vacate its dismissal along with its order remanding the case to the Board. We add, for guidance should there be further judicial proceedings, that the scope of judicial review of the Board's awards is, as with judicial review of other arbitral awards, exceedingly narrow—indeed it's been said to be "among the narrowest known to the law." *Union Pacific R.R. v. Sheehan*, 439 U.S. 89, 91 (1978) (per curiam); *American Train Dispatchers Association v. Norfolk & Western Ry.*, 937 F.2d 365, 366 (7th Cir. 1991). "As we have said too many times to want to repeat again, the question for decision by a federal court asked to set aside an arbitration award—whether the award is made under the Railway

Labor Act, the Taft-Hartley Act, or the United States Arbitration Act—is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract." *Hill v. Norfolk & Western Ry.*, 814 F.2d 1192, 1194-95 (7th Cir. 1987). That makes it doubtful that there is any basis for striking down an earnings-offset provision. Such a provision appears to be just an application of the traditional doctrine of mitigation of damages, an application—again one found in NLRB cases as well—to cases in which workers wrongfully fired are awarded back pay. See *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 197-200 (1941); cf. *NLRB v. Midwestern Personnel Services, Inc.*, 508 F.3d 418, 423 (7th Cir. 2007). But determining the validity of such a provision is a task for the district court in the first instance, should the question of validity arise in future litigation arising out of this or some other award. For us to decide the question at this juncture would exceed our authority to issue a writ of mandamus, an authority limited in this case to ordering rescission of the district court's order that vacated the earnings-offset provision and remanded the case to the Adjustment Board.

SO ORDERED.