[No. A036735. First Dist., Div. Four. July 28, 1988.]

THOMAS H. ROEMER et al., Plaintiffs and Respondents, v. JAMES L. PAPPAS et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

---

* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III through V.

**COUNSEL**

Philip M. Jelley, Stephen M. Judson and Fitzgerald, Abbot & Beardsley for Defendants and Appellants.

Ted Akulian and Page, Akulian, Harkins & Baker for Plaintiffs and Respondents.

**OPINION**

**ANDERSON, P. J.**—Defendants James L. and Alice Pappas appeal from a judgment establishing a right-of-way by necessity across their property.

## I. *Facts and Procedural History*

The property which is the subject of this suit consists of two adjoining parcels of land, the Highland Court parcel (Highland parcel) and the Roemer parcel. Dr. Thomas Clark recorded a deed to the Highland parcel on March 23, 1946. He acquired the Roemer parcel through an installment land sale contract entered by December 26, 1948, at the latest. (The contract could not be found, but its existence is not disputed.)

On June 30, 1950, Dr. Clark sold the Highland parcel to Evelyn and Scott Sparling; this sale left the Roemer parcel landlocked. Approximately seven months later, Dr. Clark acquired the deed (i.e., legal title) to the now landlocked Roemer parcel (on Feb. 26, 1951); on January 22, 1959, he transferred the Roemer parcel to his daughter and grandson, Georgia C. and Thomas H. Roemer, the plaintiffs herein.

The Roemers had several casual discussions with the Sparlings concerning access to public roads over the Highland parcel, and at one point they hired an attorney to assist them; his services were discontinued when Mr. Sparling assured them that they could work something out without legal assistance. However, nothing was ever done to secure an easement for the benefit of the Roemer parcel over the Highland parcel. In 1982 the Sparlings sold a portion of the Highland parcel to the Pappases who were advised of the Roemers' possible claim to an easement; they executed a written agreement to hold Mrs. Sparling harmless from any such claim.

Ultimately, to secure access the Roemers brought this action to quiet title in an easement by way of necessity against both the Pappases and the widowed Mrs. Sparling; they dismissed Mrs. Sparling as a party approximately two years before trial. The trial court found for the Roemers and granted them a way of necessity over the Pappases' property.

On appeal defendants challenge the judgment on the following grounds: (1) An easement by necessity cannot have arisen, because the putative common owner (Dr. Clark) held only an equitable title to the dominant tenement when the alleged necessity arose. (2) The common owner lacked the intent to retain an easement. (3) The trial court erroneously rejected the defenses of unclean hands and "balancing of the equities." (4) The trial court erred in locating the easement on defendants' parcel rather than on an

adjacent parcel. (5) Plaintiffs should be required to compensate defendants for the value of the property taken.

We reject each of these contentions and affirm the judgment.

II. *A Right-of-way by Necessity Has Been Established*

A. *Common Ownership*

The defendants first argue that the plaintiffs are not entitled to an easement by way of necessity because there never existed the requisite common ownership of the Highland and Roemer parcels for this doctrine to apply. They argue that the equitable title held by Dr. Clark to the Roemer parcel was not sufficient to encumber the Highland parcel with a way of necessity when he sold it.

" 'A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. . . .' " (*Daywalt* v. *Walker* (1963) 217 Cal.App.2d 669, 672-673 [31 Cal.Rptr. 899].) The philosophy behind this presumption is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned. (*Reese* v. *Borghi* (1963) 216 Cal.App.2d 324, 331 [30 Cal.Rptr. 868].)

A preliminary requirement to establishing a way of necessity is that the dominant and servient tenements be under the same ownership at the time of the conveyance giving rise to the necessity. (*Reese* v. *Borghi, supra,* 216 Cal.App.2d at pp. 332-333.) Dr. Clark bought the Roemer parcel under an installment land sale contract, whereby the seller, the Moraga Company, retained legal title to the property until the final payment was made, at which point legal title was conveyed to him. Defendants admit that Clark held equitable title to the Roemer parcel when he sold the Highland parcel to the Sparlings. They contend that because Clark did not have legal title, he was not a common grantor for purposes of application of the doctrine of way of necessity. While this appears to be a case of first impression, we find the distinction without significance.

Under an installment land contract, the buyer agrees to make payments over time and the seller agrees to convey legal title to the buyer at

some future date. "During the term of the contract the [buyer] acquires an 'equity ownership' in the property." (1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 2:32, pp. 260-261.) The seller conveys "his equitable interest in the property" (*Tucker* v. *Lassen Sav. & Loan Assn.* (1974) 12 Cal.3d 629, 637 [116 Cal.Rptr. 633, 526 P. 2d 1169]), retaining only "naked legal title" as security (*Estate of Reid* (1938) 26 Cal.App.2d 362, 367 [79 P.2d 451]). Equity "considers the purchaser to be the owner of the land," and the seller is said to have "no greater rights than he would possess if he had conveyed the land and taken back a mortgage." (*Elliott* v. *McCombs* (1941) 17 Cal.2d 23, 31 [109 P.2d 329].) The buyer's interest is subject to property tax (*Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 643), and the buyer will receive title free and clear, as against the sellers' judgment creditors, upon making the final payment under the contract (1 Miller & Starr, *supra,* § 2:34, p. 268). In sum, the buyer is generally deemed the "owner" notwithstanding the retention of legal title by the seller. (See *Elliott* v. *McCombs, supra,* 17 Cal.2d at p. 31 [buyer "is for all purposes the owner"].) Here, as the trial court correctly observed, Dr. Clark as purchaser had taken possession of the property and paid taxes thereon; the seller retained legal title for security, and Clark was for all purposes the owner.

The significance of purchasing real property under an installment land sale contract as compared to buying property outright and securing the loan for that purchase with a deed of trust lies in the remedy for breach of the agreement—an action for breach of contract in the former case and foreclosure on the deed of trust in the latter. We see no reason to deny respondents the benefit of the strong public policy favoring ways of necessity simply because the common grantor (Clark) employed different means in purchasing the Highland and Roemer parcels.

### B. *Existence of Necessity*

To establish a right to a way of necessity, strict necessity must exist; that is, when the claimed way constitutes the only access to the claimant's property. (*Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137]; *Reese* v. *Borghi, supra,* 216 Cal.App.2d at p. 332.) While evidence was presented that plaintiffs had contacted the owner of property abutting his on the other side of the Highland parcel and been denied access, the trial court correctly concluded that such attempt is not a prerequisite for establishing an easement by way of necessity: "Plaintiffs' common law right to seek a right-of-way of necessity is not affected by the fact that they could have a right-of-way by condemnation [citations]." (*Reese* v. *Borghi, supra,* 216 Cal.App.2d at pp. 329-330.) Just as in *Reese,* "the plaintiffs here were not 'driven to a proceeding to condemn the land on payment of its value,' " citing *Taylor* v. *Warnaky* (1880) 55 Cal. 350, 351. (*Id.,* at p. 330.)

However, creation of a way of necessity *is* founded upon the salutary public policy against permitting land to remain in perpetual idleness. (*Lichty* v. *Sickels, supra,* 216 Cal.App.2d at p. 703.) And where land is not capable of being developed, ingress and egress rights will not affect that land's idleness and no necessity for an easement then arises.

Defendants contend that the court erred in sustaining plaintiffs' motion *in limine* to exclude evidence concerning the "difficulty of building on or developing the [plaintiffs'] property." They argue that if allowed to develop this issue, they would have established the issue of the "undevelopability" of the Roemer parcel and that strict necessity did not exist because there could be no beneficial use to which the property might be put.

Defendants may be correct that if they can establish that the Roemer parcel is incapable of development and, therefore, useless, there exists no necessity for access. Since the doctrine of easement by way of necessity rests upon the public policy that the law favors utilization of land, that policy is not furthered if the land is incapable of utilization. However, defendants confuse "incapability" of development and "difficulty" of development. Plaintiffs' motion *in limine* was directed to "defendant's proposed testimony concerning *the difficulty* of building or developing the plaintiff's property . . . ."[1] (Italics added.) Such testimony is clearly irrelevant. The court did not forbid introduction of evidence that proves the impossibility of developing the Roemer parcel. Indeed, that the property is capable of development, even though difficult, would seem to be demonstrated by plaintiffs' investment in this lawsuit and by their willingness to pay the cost of constructing the access road. Nothing in the record before us indicates a motive on the part of plaintiffs other than development. Necessity has been established.

## C. *Intent Not to Retain Easement*

 Defendants argue that Clark did not intend to retain an easement over the Highland parcel. When the conditions for an easement by necessity are shown the law presumes that the grantor intended to reserve such an easement. (*Hewitt* v. *Meaney* (1986) 181 Cal.App.3d 361, 366 [226 Cal.Rptr. 349].) The presumption, however, is rebuttable; "an easement by necessity will not be imposed contrary to the actual intent of the parties." (*Id.,* at pp. 366-367.) The presumption is one affecting the burden of proof, and to overcome it the defendant must show by a preponderance of the evidence that "the common grantor did not intend to reserve an easement through the granted parcel." (*Id.,* at p. 367.)

---

[1] We note that the record does not contain the written motion *in limine,* and we assume its contents have been correctly described by its title.

Defendants cite the following facts in an attempt to overcome the presumption: (1) Clark made no reference to retaining access to the Roemer parcel in the deed to the Highland parcel; (2) the purchase price paid by the Sparlings was not reduced because of the reservation of an easement; (3) Clark initially offered to sell the Sparlings both parcels; and (4) that Dr. Clark, after he had already sold them the Highland parcel, telephoned the Sparlings offering to sell it to them without mentioning reservation of an easement; defendants claim this conversation constituted a disclaimer of any right of access over the defendants' portion of the Highland parcel.

The argument is addressed to the wrong forum and ignores the respective functions of trial and appellate courts. The question of the grantor's intent was one of fact for the trial court. (See *Hewitt* v. *Meaney, supra,* 181 Cal.App.3d at pp. 367, 368, 371.) On appeal that court's determination cannot be disturbed if there was substantial evidence to support it. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 278, p. 289.) A party who challenges the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180 Cal.App.3d 565, 587-588 [225 Cal.Rptr. 717].)

Defendants have made no attempt to comply with these requirements. They set out only the evidence in their favor, ignoring evidence which supports a contrary view. They seem to concede that the evidence was conflicting, repeatedly asserting that their showing was "sufficient to overcome the presumption," and that there was a "preponderance of evidence" that no easement was intended. Their citations to *Hewitt* v. *Meaney, supra,* 181 Cal.App.3d 361, are unavailing, for the trial court there found the presumption rebutted and the issue on appeal was the sufficiency of the evidence to support that finding. No such finding was made by the trial court herein, nor was one requested.

On the subject of intent the only cognizable argument raised is that the trial court erred by excluding evidence alleged to prove "the difficulty of creating access to the Roemer lot over the Highland Court parcel." Evidence that the dominant parcel is "virtually inaccessible" over the servient parcel may, indeed, support an inference that the grantor did not intend a right of access. (See *Hewitt* v. *Meaney, supra,* 181 Cal.App.3d at p. 370.) However, the record before us does not establish that evidence of *inaccessibility* was ever offered or excluded. There was some discussion of soil instability, but defendants' counsel said such evidence went to the difficulty of developing the Roemer parcel, not the difficulty of constructing or maintaining the proposed driveway. The issue of Dr. Clark's lack of intent to

retain an easement was never really raised at trial; we refuse to entertain it here.

### III.-V.*

. . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed in its entirety.

Channell, J., concurred.

**POCHÉ, J.**—I concur in the judgment and in the holding that equitable title to the dominant parcel is sufficient for purposes of the "common ownership" requirement for an easement by necessity. I decline, however, to join in the majority's discussion on the question of "undevelopability." That discussion is wholly unnecessary to the resolution of this case, and I am not convinced that it makes a positive contribution to the law.

The majority declares that no easement of necessity should be recognized when the dominant parcel is undevelopable, because there is no necessity for access in such a case. This proposition was not raised by the parties, below or here. The whole issue has apparently grown out of a single sentence in defendant's brief (i.e., "Defendants were foreclosed from offering evidence of the difficulty of developing the Roemer parcel and of the diminution in value of defendants' parcel caused by the imposition of a right-of-way"). This sentence appears in a discussion of the trial court's supposed error in rejecting the "defense" of "balancing of the equities." Since the majority apparently agrees with me that no such defense was available to defendants, the exclusion of evidence in connection with such a defense cannot be error.

The majority concludes, however, that some such evidence (though not this evidence) would be admissible (in a proper case) to show that the element of necessity is missing. At this stage of the case it makes no difference whether the excluded evidence might have been admissible on this theory because there is no indication that the evidence was ever offered for any such purpose. (See Evid. Code, § 354, subd. (a) [no reversal for exclusion of evidence unless record shows trial court was apprised of purpose of evidence]; *People* v. *Wiley* (1976) 57 Cal.App.3d 149, 162 [129 Cal.Rptr. 13], disapproved on another point in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 286-287 [148 Cal.Rptr. 890, 583 P.2d 748] [on appeal, defend-

---

*See footnote, *ante,* page 201.

ant could not rely on theory of admissibility not imparted to trial court].) Therefore the majority's consideration of the "undevelopability" issue is not necessary to the resolution of this case.

Nor am I prepared to agree that the theory announced by the majority is sound. I cannot determine what it means to say that land is "incapable of development," and I fear litigants and judges will be as perplexed by this language as I am. I can think of three possible senses in which this phrase might be applied. The first is the sense of "absolute impossibility." This seems to be the sense intended by the majority, for as noted below it declares evidence of economic infeasibility "clearly irrelevant." Yet the idea of absolute impossibility has almost no meaning in the context of real estate development. Aside from the crater of an active volcano, there is probably no piece of land that *cannot* be developed, given a big enough investment of money and effort. Therefore the majority's discussion seems to render this new defense largely unusable.

Although it does not say so, the majority may mean that the defense applies only where development is *legally* impossible, that is, barred by some regulation or ruling. Laws can be changed, however, and I wonder whether the majority really means to say that access to a given parcel can be forever precluded just because development happens to be prohibited when suit is brought.

If the defense announced by the majority is to have any reasonable application in the real world it must be predicated on a showing that development is economically infeasible. Yet the majority flatly rejects such a test, holding the evidence offered in this case "clearly irrelevant" (*ante*, at p. 207); that evidence consisted of the opinion of an expert that "it would not be economically feasible to construct a single family residence upon the Roemer parcel."

I, too, doubt the wisdom of a rule which would condition the granting of an easement by necessity on a finding of economic feasibility. Economic feasibility, particularly in the residential setting, is in the eye of the potential owner. The offer of proof here suggested that construction of a house on the Roemer parcel might cost up to $200 per square foot, in contrast to $100 for other properties in the neighborhood. Yet who is to say that some buyer would not be willing to absorb the additional cost? And who is to say that economic and legal factors will not change in two, five, or twenty years, to make the infeasible feasible? I fail to see why such nebulous and transitory conditions should foreclose the use of land.

In this regard it should also be noted that the opinion equates the "utilization" of property and its "development." Undeveloped property may be

"utilized," as any lover of nature will attest. One apparent effect of the suggested rule is to prevent the enjoyment of lands which must be left in a natural state. I am not satisfied that this is a good idea.

I also find unnecessary and inaccurate the majority's discussion of plaintiffs' motives for bringing suit. There is no evidence that plaintiffs intend to develop the property rather than sell it. In 1982 their attorney proposed that the Sparlings grant an easement in exchange for a share of proceeds from the sale of the property. Nor does anything in the record support the majority's assertion that plaintiffs have demonstrated a "willingness to pay the cost of constructing [an] access road." (*Ante,* at 207.) Plaintiffs have merely demonstrated a willingness to sue for a *right* to build such a road. Having prevailed, they can sell this right along with their property, the value of which it undoubtedly enhances. The bringing of suit may therefore reflect nothing more than a cost-benefit analysis whose particulars we can only guess at.

I would affirm the judgment without reaching issues not properly before us.