[No. C017296. Third Dist. Mar. 23, 1995.]

SAMMY LAM, Plaintiff and Appellant, v.
BUREAU OF SECURITY AND INVESTIGATIVE SERVICES, etc., et
al., Defendants and Respondents.

32

COUNSEL

James Jay Seltzer and Timothy D. Murphy for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Joel S. Primes and Arthur Taggart, Deputy Attorneys General, for Defendants and Respondents.

OPINION

SPARKS, J.—After the Department of Consumer Affairs (Department) revoked his locksmith's permit, plaintiff Sammy Lam filed a petition for writ of administrative mandamus (Code Civ. Proc., § 1094.5) to overturn the Department's decision. The trial court denied his petition. On appeal, plaintiff contends the Department's actions were barred by laches, and further suggests that revocation of his permit was unwarranted. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

In February 1989, Theresa Randall locked her keys in her car. Her companion called Fairfield Safe & Lock, a company owned by plaintiff, to open the car. Plaintiff arrived on the scene and asked Randall for identification. She showed him her driver's license and gave him her phone number. Plaintiff then opened the car.

[1]We previously granted plaintiff's motion to take judicial notice of the administrative record filed in conjunction with an earlier writ petition before this court (*Lam v. Superior Court* (May 27, 1993) C015903 [nonpub. opn.]).

Randall lived in an upstairs apartment in a four-unit building in Benicia. A short time after the locked-car incident, Randall's downstairs neighbor told her that on several occasions she had heard someone in Randall's apartment while Randall was gone. She had seen plaintiff going up and down the stairs to Randall's apartment. She had also seen plaintiff working with tools in the back of a truck near the building, and on one occasion saw him drive the truck around the building. Randall told the neighbor neither she nor the landlord had authorized anyone to be in her apartment.

On May 25, 1989, the neighbor again heard noises in Randall's apartment, so she called the police. Plaintiff was arrested on the scene. He had gained access to the apartment by making a key for the lock.

Plaintiff was charged in municipal court with violating Penal Code section 602.5 (unauthorized entry of a dwelling). Plaintiff entered a plea of not guilty and was diverted to a "deferred prosecution" program offered in Solano County. The case was subsequently dismissed in January 1990.

On May 6, 1992, the Department's Bureau of Collection and Investigative Services (Bureau) filed an accusation seeking to suspend or revoke plaintiff's locksmith permit. The accusation was based on former Business and Professions Code section 6980.32, subdivision (c), which authorized permit suspension or revocation if the permit holder "[k]nowingly use[s] or permit[s] the use of any of his or her skills, tools, or facilities for the commission of any crime." (Stats. 1987, ch. 877, § 25, p. 2773.)[2]

Several witnesses testified at the administrative hearing. The arresting officer stated that when he searched plaintiff at Randall's apartment, he found a key to Randall's door in plaintiff's waistband. The officer also said plaintiff kept locksmith tools in the bed of his truck, which was parked outside the apartment building. Randall's neighbor described the several occasions in which she had seen or heard plaintiff in and around Randall's apartment.

A psychologist testified in plaintiff's behalf. He described his interviews with and testing of plaintiff and opined that this incident was an isolated

---

[2]The chapter of the Business and Professions Code pertaining to locksmiths was revamped in 1993 to provide for licensure rather than permits. (See Bus. & Prof. Code, § 6980 et seq.) Former Business and Professions Code section 6980.32 has been reenacted as section 6980.74, and is identical in all respects, other than its references to licenses rather than permits.

We note in passing that given the procedural posture of plaintiff's criminal case, the Department was precluded from proceeding under Business and Professions Code section 6980.74, subdivision (d), of this statutory scheme, which permits revocation in the event of a "[c]onviction of a crime substantially related to the qualifications, functions, or duties of a locksmith."

occurrence occasioned by a particularly stressful period in plaintiff's life. Plaintiff's wife had suffered a severe psychological breakdown and, according to the psychologist, plaintiff felt particularly lonely. Plaintiff became obsessed with Randall after meeting her and went to her apartment to "be close to her." He did not make any overt threats toward Randall, and made sure Randall was not in the apartment when he went there. He went to the apartment to look at and to touch Randall's belongings. The psychologist testified that plaintiff was humiliated and shamed by his arrest. This embarrassment, coupled with the fact that plaintiff's wife had recovered from her illness, led the psychologist to believe that there was no chance of a recurrence. The psychologist acknowledged, however, that plaintiff would likely have continued trespassing in Randall's home had he not been arrested. Plaintiff never expressed any remorse to the psychologist for entering the apartment. The psychologist was unsure whether plaintiff had learned appropriate skills to deal with stress.

Plaintiff testified in his own behalf. He noted he had been a locksmith for 19 years and had never had any previous problems. He owned three companies and had several employees. Plaintiff said that between the time his criminal case was dismissed and the time he received notification of the permit revocation proceedings, he had invested in his business, hired more employees and purchased equipment. Had he known of the potential revocation, he "probably" would not have expanded his business because he "[did not] like to let people go." Two of his businesses had employees who possessed locksmith permits and were authorized to perform general locksmith functions. The third store was simply a key duplicating shop, whose employees were exempt from locksmith permit requirements.

Plaintiff readily admitted he had made the key to get into Randall's apartment by using the equipment in his truck. He admitted going to Randall's apartment two or three times before being arrested.

Plaintiff argued the doctrine of laches precluded the Bureau from seeking revocation of his permit. He noted nearly three years had passed from the time his criminal case was dismissed to the time the accusation was filed. He asserted he was prejudiced by this delay because he had expanded his business during this interim period. He further argued revocation was unwarranted because the incident was aberrational and unlikely to recur. The Bureau countered that plaintiff had not been prejudiced by the delay and had failed to explain how the expansion affected his businesses, particularly since two of his companies employed people with locksmith permits, while the third did not even require a permit to operate.

The administrative law judge issued a lengthy proposed decision revoking plaintiff's permit. The judge found the psychologist to be a "less than

persuasive witness, much less." He noted plaintiff "did not express any remorse for what he did or its impact on the young woman. He has not had any counseling since his arrest on May 25, 1989, although he would seem a prime candidate for counseling regarding dealing appropriately with stress, obsessions, and relationships." The judge continued: "The best that can be said regarding whether he is rehabilitated is that he has not been caught doing it again in the over three years since his arrest, which must be balanced against the fact that he misused his locksmithing knowledge and skill and information he gained about a customer during the course of business to illegally enter her apartment for his personal gratification. He seems a very bad risk." The judge rejected plaintiff's laches claim, noting that while plaintiff had presented evidence "that he had to some unquantified extent expanded his businesses and increased his business debt during the interim," he failed to show any real injury from these activities.

The director of the Department adopted the proposed decision and ordered the revocation effective January 10, 1993.

Plaintiff filed a petition for administrative mandamus, asserting the Department's decision constituted an abuse of discretion. He argued he had established the requisite elements for laches, and reiterated his belief that the conduct complained of would not recur. The trial court denied the petition, ruling among other things that "[t]he only evidence [plaintiff] offered to support his claim of prejudice at the administrative hearing involved investments in and steps he had taken to expand his businesses. There was no evidence presented that [plaintiff] would lose money on any of these investments. [Plaintiff] has failed to establish real prejudice and as a consequence cannot satisfy the requirements for laches." This appeal followed.

### STANDARD OF REVIEW

■ "The right to practice one's profession is a fundamental vested right and if a person's license to practice that profession is revoked by an administrative agency, when a petition for a writ of mandate is brought for restoration of the license, the trial court must apply its independent judgment to its review of the facts underlying the administrative decision. [Citations.]

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Under the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings should be sustained. When an appeal is taken from the trial court's determination, it is given the same effect as any other judgment after trial

rendered by the court: the only question is whether the *trial court's* (not the administrative agency's) findings are supported by substantial evidence. [Citation.] Conflicts in the evidence must be resolved in favor of the judgment and where two or more inferences can be reasonably drawn from the facts, the reviewing court must accept the inferences deduced by the trial court." (*Vaill* v. *Edmonds* (1991) 4 Cal.App.4th 247, 257-258 [6 Cal.Rptr.2d 1], italics in original.) However, ". . . the trial court's legal conclusions are open to our examination to determine if errors of law were committed." (*Collins* v. *Board of Medical Examiners* (1972) 29 Cal.App.3d 439, 444 [105 Cal.Rptr. 634].)

"Evidence is substantial if any reasonable trier of fact could have considered it reasonable, credible and of solid value." (*Kearl* v. *Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1052 [236 Cal.Rptr. 526].) Additionally, a reviewing court "may look to the findings in [the administrative agency's] decision for guidance in determining whether the trial court's judgment is supported by substantial evidence." (*Ibid.*)

DISCUSSION

I.  *Laches*

■    Plaintiff asserts the trial court erred in ruling a laches defense had not been established. Citing *Brown* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1151 [213 Cal.Rptr. 53] (*Brown*), plaintiff argues that the delay here must be presumed to be unreasonable, thus shifting the burden to the Department to demonstrate that plaintiff had not been prejudiced thereby. We disagree.

■    Statutes of limitation and the doctrine of laches are both designed " ' "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." ' [Citations.]" (*Brown, supra,* 166 Cal.App.3d at p. 1161.) These policies also guard against other injuries caused by a change of position during a delay. While a statute of limitations bars proceedings without proof of prejudice, laches "requires proof of delay which results in prejudice or change of position." (*Ibid.*) Delay alone ordinarily does not constitute laches, as lapse of time is separately embodied in statutes of limitation. (*Id.* at p. 1159.) What makes the delay unreasonable in the case of laches is that it results in prejudice. (*Ibid.*)

■    It is undisputed that a trial court "has the inherent power to dismiss administrative proceedings brought to revoke a state-issued license where

there has been an unreasonable delay between the discovery of the facts constituting the reason for the revocation and the commencement of revocation proceedings, and where the licensee has been prejudiced by the delay. The trial court's determination here should be reversed only upon a showing of manifest abuse of discretion resulting in a miscarriage of justice." (*Gates v. Department of Motor Vehicles* (1979) 94 Cal.App.3d 921, 925 [156 Cal.Rptr. 791].)

■ There is one circumstance in which unreasonable delay may be found as a matter of law. "In cases in which no statute of limitations directly applies but there is a statue of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit or reasonable delay in determining laches. [Citations.] Whether or not such a borrowing should occur depends upon the strength of the analogy." (*Brown, supra*, 166 Cal.App.3d at pp. 1159-1160.) The effect of the violation of the analogous statute of limitations is to shift the burden of proof to the plaintiff to establish that the delay was excusable and the defendant was not prejudiced thereby. (*Id.* at p. 1161.)

*Brown, supra,* involved the 1981 dismissal of a faculty member at a state university campus for incidents of sexual harassment occurring in 1975 and 1979. (166 Cal.App.3d at pp. 1155-1157.) The professor asserted that disciplinary proceedings based on the 1975 incidents were barred by laches, analogizing to a provision of the Government Code that required disciplinary action against civil service employees to be brought within three years after the cause for discipline arose. (*Id.* at p. 1157.) We agreed, finding the Government Code section to provide a strong analogy that reflected a "legislative policy judgment that a delay of three years is inherently unreasonable in the prosecution of disciplinary actions against a broad range of public employees. The vast and undifferentiated gamut of state employees which are covered by this provision includes employees whose positions mirror those of [state university] employees. [Citation.] Thus, [this section] provides a compelling indication of the outer limit of delay which is reasonable in the prosecution of a disciplinary action against an employee of the state university system. We borrow this period and hold that unless excused, a delay in the initiation of disciplinary proceedings for more than three years is unreasonable as a matter of law." (*Id.* at p. 1160.)

■ Relying on *Brown, supra,* plaintiff asserts an analogous statue of limitations period can be found here in Penal Code section 802, which establishes a one-year statute of limitations for the prosecution of misdemeanor offenses. Plaintiff argues that since his permit revocation was predicated on a misdemeanor act, the statute of limitations for that offense must

be applied. Because the Department's actions occurred more than one year after the criminal offense took place, plaintiff contends unreasonable delay must be presumed and the burden should have been shifted to the Department to explain the reasons for its delay and to prove plaintiff was not prejudiced thereby. We do not agree.

As we noted in *Brown, supra,* borrowing a statute of limitations is appropriate *only* if the two actions are strongly analogous. (166 Cal.App.3d at p. 1160.) That is not the case here. Plaintiff was charged in the criminal proceeding with violating Penal Code section 602.5. The basis for the permit revocation proceeding was not that he violated this statute, but that he knowingly used his skills, tools, or facilities for the commission of a crime. The focus of the two proceedings is thus entirely different, with one focusing on plaintiff's criminal actions, and the other on the abuse of his professional skills to commit that crime. This situation stands in stark contrast to the cases cited by plaintiff, such as *Brown, supra,* where the court analogized a statute of limitations for disciplining a state employee to a situation involving the discipline of another type of state employee, or *In re Marriage of Modnick* (1983) 33 Cal.3d 897 [191 Cal.Rptr. 629, 663 P.2d 187], in which the court analogized to the statute of limitations for fraud in an action to set aside a property settlement agreement for fraud.

Moreover, while criminal proceedings are punitive in nature, permit or license revocation proceedings are not. "Administrative proceedings are civil in nature. With particular reference to a proceeding to revoke or suspend a license or other administrative action of a disciplinary nature, it has been held in this state that such proceeding is not a criminal or quasi-criminal prosecution. [Citations.] The purpose of such a proceeding is not to punish but to afford protection to the public upon the rationale that respect and confidence of the public is merited by eliminating from the ranks of practitioners those who are dishonest, immoral, disreputable, or incompetent." (*Borror* v. *Department of Investment* (1971) 15 Cal.App.3d 531, 540 [92 Cal.Rptr. 525].)

Because of the significant differences between these two proceedings, we conclude this case is not an appropriate one in which to "borrow" a statute of limitations.[3] Thus, the burden did not shift to the Department to prove that the delay was excusable and that plaintiff suffered no prejudice. Instead, it

---

[3]The administrative law judge also rejected the idea of borrowing a statute of limitations. He stated in his decision: "The statutes of limitation that govern civil or criminal matters do not apply to administrative actions to discipline a license and there is no specific limitation of such actions in the Business and Professions Code *nor is there any statute of limitation for some comparable action to this that could be applied by analogy.* The nearest that can be found would be the three[-]year statute of limitation in the Code of Civil Procedure section 338 for

remained plaintiff's burden to demonstrate that the delay was unreasonable and caused him to be prejudiced. The trial court found neither requirement was met, a conclusion plaintiff challenges on appeal. ■ Even were we to assume for sake of argument that plaintiff established unreasonable delay, the court properly found plaintiff's showing of prejudice to be insufficient.

At the administrative hearing, plaintiff testified that from the date his criminal case was dismissed until the time the accusation was filed, he continued to work as a locksmith, added more employees, and bought more equipment and a new van. When asked whether he would have taken these steps had he known the Department would seek revocation of his permit, plaintiff replied, "Probably not, because, you know, when I hire a person, I take them as part of my family. I don't like to let people go." He added that he "probably" would have organized his business differently had he known of the pending revocation. One of plaintiff's businesses was a key duplicating shop and did not require a locksmith permit to operate. The other two businesses employed people who had locksmith permits, although they were not as experienced as plaintiff.

This evidence is not sufficient to establish prejudice. Plaintiff did not indicate which company hired the additional employees; if they all worked at

---

actions based upon a liability created by statute. If that statute were applied to this matter, then the action was filed in a timely manner." (Italics added.) The cited statute, Code of Civil Procedure section 338, subdivision (a), provides a three-year limitations period for "[a]n action upon a liability created by statute, other than a penalty or forfeiture."

The trial court apparently misinterpreted the administrative decision, stating the administrative law judge "was correct in determining that the analogous statute of limitation was that set forth in Code of Civil Procedure section 338[, subdivision] (a) . . . ." The trial court commented: "[Plaintiff] conten[ds] that the instant action constitutes a penalty or forfeiture and is by definition excluded from the three-year limitations under Code of Civil Procedure section 338[, subdivision] (a). The Court disagrees with this position. Disciplinary action under the statute governing the conduct of a locksmith need not be premised only upon acts which constitute a public wrong."

The trial court's comment seems to contradict the language of former Business and Professions Code section 6980.32, which provided for the suspension or revocation of a permit "for acts including, but not limited to, any of the following acts *which shall also be unlawful.*" (Stats. 1987, ch. 877, § 25, p. 2773, italics added.) Subdivision (c) of that statute, the provision with which plaintiff was charged, applies to anyone "[k]nowingly using or permitting the use of any of his or her skills, tools, or facilities *for the commission of any crime.*" (Stats. 1987, ch. 877, § 25, p. 2773, italics added.) Because we have concluded that the one-year statute of limitations period urged by plaintiff is, as a matter of law, not appropriately applied to this revocation proceeding, we have no occasion to discuss further the applicability of Code of Civil Procedure section 338, subdivision (a). Under either scenario—finding no analogous statute of limitations, or using the three-year statute relied upon by the court—the delay cannot be presumed unreasonable, and the burden of proof remained with plaintiff. Our conclusion also obviates the need to resolve plaintiff's claim that the Department should be estopped from asserting any statute of limitations other than that in Penal Code section 802 as an analogous limitations period.

the duplicating shop, his license revocation was immaterial. Moreover, his statement that he "probably" would not have expanded his businesses is a less than ringing claim of prejudice. He did not explain how these expansion efforts affected each of his companies, nor did he testify with any specificity as to the nature or cost of these expansion measures. Presumably many of these costs could have been recouped if plaintiff sold his businesses.

Plaintiff also contends he was prejudiced because the passage of time affected the memory of the psychologist testifying on his behalf, rendering him a less than effective witness. We disagree. The psychologist testified at length concerning his interview with, and examination of, plaintiff, and his belief that the incident was situational and unlikely to arise again. While the psychologist had to refer to his notes on occasion to refresh his memory, other witnesses, including the arresting officer, did the same. There is no indication that the psychologist's testimony was discounted because he used his notes in this manner. The psychologist testified in detail concerning his views of plaintiff, with any lapses of memory pertaining to peripheral issues. The administrative law judge's comments clearly indicate he found this witness to be "less than persuasive" not because of any memory problems, but because the substance of his testimony was unconvincing.

In sum, ample evidence supports the trial court's finding that plaintiff was not prejudiced by the Department's delay in initiating the permit revocation proceeding. Because this requisite element was not established, plaintiff cannot invoke laches. (*Gates* v. *Department of Motor Vehicles*, *supra*, 94 Cal.App.3d at p. 925.)

## II. *Propriety of Discipline Imposed*

Plaintiff includes in his appellate brief a section devoid of legal argument entitled "[PLAINTIFF] DEMONSTRATED REMORSE AND REHABILITATION FOR THE INCIDENT UNDERLYING THIS CASE." Plaintiff recaps his background, his testimony at the administrative hearing, and that of the psychologist testifying on his behalf. He concludes: "[Plaintiff] has therefore not only shown remorse for the single misdeed that blots his long record of work. He is also no longer subject to the extreme conditions which led to his arrest and has demonstrated his rehabilitation." Nowhere does plaintiff assert the argument implicit in his comments, namely that revocation of his permit was unwarranted. Moreover, in violation of all rules of appellate advocacy, plaintiff presents only that evidence which is favorable to him, while ignoring the substantial contrary evidence supporting the judgment. (*Roemer* v. *Pappas* (1988) 203 Cal.App.3d 201, 208 [249 Cal.Rptr. 743].) Under these circumstances, we would be well within our discretion in deeming any claim of error waived.

■ However, we briefly respond to plaintiff's suggested argument on its merits. "[T]he propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency and its decision may not be disturbed unless there has been a manifest abuse of discretion." (*Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 966 [103 Cal.Rptr. 455].) "Neither a trial court nor an appellate court is free to substitute its discretion for that of an administrative agency concerning the degree of punishment imposed." (*California Real Estate Loans, Inc.* v. *Wallace* (1993) 18 Cal.App.4th 1575, 1580 [23 Cal.Rptr.2d 462].)

Here, plaintiff was obsessed with a one-time customer and made a key to give him access to her apartment. He entered her home on several occasions after first verifying she was not there. He walked around her apartment, inspecting and touching her belongings. While the stressful incidents giving rise to this intrusive behavior had apparently ended, plaintiff did not receive any therapy or counseling to learn appropriate methods of handling stress. The psychologist testifying in plaintiff's defense admitted that had plaintiff not been arrested, he probably would have continued trespassing in the victim's apartment.

As the administrative law judge found: "The best that can be said regarding whether [plaintiff] is rehabilitated is that he has not been caught doing it again in the over three years since his arrest, which must be balanced against the fact that he misused his locksmithing knowledge and skill and information he gained about a customer during the course of business to illegally enter her apartment for his personal gratification. He seems a very bad risk."

Given the egregious nature of plaintiff's conduct and his failure to take any preventative steps to learn how to avoid similar problems in the future, the Department acted well within its discretion in revoking plaintiff's locksmith permit.

## DISPOSITION

The judgment is affirmed.

Puglia, P. J., and Raye, J., concurred.