68 Cal.Rptr.3d 200 (2007)
156 Cal.App.4th 1434
Cheryl MURPHY, Plaintiff and Respondent,
v.
Roger BURCH, et al., Defendants and Appellants.
No. A117051.
Court of Appeal of California, First District, Division Two.
November 19, 2007.
Petersen Law Offices, Thomas E. Owen, Robert C. Petersen, Fort Bragg, for Appellants.
Carter, Vannucci & Momsen, LLP, Jared G. Carter, for Respondent.
HAERLE, Acting P.J.

I. Introduction
Appellants Roger and Michele Burch appeal from a judgment of the Mendocino County Superior Court which held, on facts stipulated by the parties, that an easement by necessity existed across property owned by them in favor of plaintiff and respondent Cheryl Murphy (as trustee of the "Murphy Children Education Trust"), the owner of neighboring property which lacks access to a public road. We disagree and hence reverse.

II. Factual and Procedural Background
As already noted, the parties stipulated to the facts in this case. As pertinent here, they are as follows: Prior to 1876, all of the properties involved in this case were owned by the federal government. In that year, the first of several parcels now making *201 up the Burch property was deeded, by federal government patent,[1] to one of the several predecessors in interest to the Burches. Between then and 1929, all the remaining properties now comprising the Burch property were likewise deeded to private owners by the federal government; by 1929, the Burches' predecessors in interest owned all the property the Burches presently own. The other property, the parcel now owned by respondent Murphy, was still owned by the federal government.
However, that situation changed three and a half years later, on December 28, 1932, when the federal government granted to one John Bridges, again by patent, the property that now comprises the "landlocked" four parcels making up the Murphy property. After eight prior transfers of title starting in 1933, Murphy's trust purchased the property in 1998.
At the time of the 1932 conveyance to Bridges, Murphy's predecessor in interest, the federal government's patent grant did not include any grant of an easement over the access road from that property to the nearest public road, State Highway 162. There was such an access road, but it ran across the neighboring property, then owned by the Burches' predecessor in interest. At no time in the past had there been any express grant of an easement from what is now the Murphy property over what is now the Burch property to that state highway. Nor, per the parties' stipulation submitted to the trial court, had there been an acquisition of an easement by prescription in favor of what is now the Murphy property. The Murphy property was, therefore, "landlocked" without any express or prescriptive easement across the neighboring Burch property to the state highway.
In October 2002, the Third District Court of Appeal decided Kellogg, supra, 102 Cal.App.4th 796, 125 Cal.Rptr.2d 817, a case which will be discussed in detail below. Based on, and indeed citing that decision, in 2003 respondent Murphy's counsel wrote to all the property owners along the access road requesting that they deed to her access across their property on the access road pursuant to the decision in Kellogg.[2] Several of the other property owners settled this issue with Murphy out of court, but the Burches (and apparently the owners of two other parcels) declined this request. On October 15, 2004, Murphy filed the present quiet title action against them. The Burches answered that complaint and cross-complained against Murphy to quiet title to the easement; this cross-complaint was, in turn, answered by Murphy. The owners of the other two parcels named in the action settled with Murphy.
The stipulated facts were submitted to the court on April 18, 2006, and both parties thereafter submitted briefs on the issue of the existence of an easement by necessity in favor of Murphy over the Burch property. On August 7, 2006, the case was argued before the trial court, which issued its tentative decision in favor of Murphy on October 26, 2006. No statement of decision was requested or issued and, on November 29, 2006, judgment in accordance with the tentative decision was issued in favor of Murphy. The Burches filed a timely notice of appeal.

*202 III. DISCUSSION

A. The Issue Presented and Our Standard of Review.

Bearing in mind the parties' stipulation to the relevant facts, the issue before us is clear: did the patent conveyances by the federal government to, first, the various predecessors in interest to the Burch appellants and, three and a half years later, to the predecessor in interest to respondent Murphy include an easement by necessity over the former property in favor of the latter property? Equally clear is that this is purely an issue of law entitled to de novo review by us. (See, e.g., Nguyen v. Calhoun (2003) 105 Cal.App.4th 428, 437-438, 129 Cal.Rptr.2d 436, and authorities cited therein.)

B. California Law Regarding Easements by Necessity.

The parties properly devote much of their briefs to us debating which of two recent appellate decisions (and, in some respects, how much of each) governs the outcome of this appeal. These decisions are Moores v. Walsh (1995) 38 Cal.App.4th 1046, 45 Cal.Rptr.2d 389 (Moores), a decision by our colleagues in Division Three of this court, and Kellogg, supra, 102 Cal. App.4th 796, 125 Cal.Rptr.2d 817, a decision by the Third District Court of Appeal. Both cases involved, as does the present one, parcels of major blocs of land owned in the 19th century by the federal government.
Before getting to those cases, however, a brief general outline of California law relating to easements by necessity, in cases where there was no prior federal land ownership and patent grant, is appropriate.
That law is best summarized in two decisions by other divisions of this court. The first, chronologically is Reese v. Borghi (1963) 216 Cal.App.2d 324, 332-333, 30 Cal.Rptr. 868 (Reese), where Justice Sullivan, writing for a unanimous Division One of this district, stated: "The California rule is settled that a right-of-way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way as when the claimants' property is landlocked [citations] and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity."
This statement was elaborated upon in a decision by then-Presiding Justice Anderson of Division Four of this district, Roemer v. Pappas (1988) 203 Cal.App.3d 201, 249 Cal.Rptr. 743 (Roemer). There, the court affirmed a judgment of the Contra Costa County Superior Court that an easement of necessity had been created over the land of the appellant because of the satisfaction of the two requirements for such an easement set forth by the Reese court, namely, prior common ownership and the existence of necessity. Regarding the first requirement, the Roemer court stated: "`"A way of necessity is an easement arising from an implied grant or implied reservation; it is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses...."' [Citation.] The philosophy behind this presumption is that the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately *203 owned. (Reese[, supra,] 216 Cal.App.2d 324, 331[, 30 Cal.Rptr. 868]....) [¶] A preliminary requirement to establishing a way of necessity is that the dominant and servient tenements be under the same ownership at the time of the conveyance giving rise to the necessity. (Reese[, supra, at pp. 332-333, 30 Cal.Rptr. 868].)" (Roemer, supra, at p. 205, 249 Cal.Rptr. 743.)
Regarding the requirement of necessity, the Roemer court continued: "To establish a right to a way of necessity, strict necessity must exist; that is, when the claimed way constitutes the only access to the claimant's property. [Citations.]" (Roemer, supra, 203 Cal.App.3d at p. 206, 249 Cal.Rptr. 743, citing Reese, supra, 216 Cal.App.2d at p. 332, 30 Cal.Rptr. 868.)[3]
The question at issue in this appeal is the extent to which these rules regarding easements of necessity apply to properties conveyed, whether simultaneously or at different times, by the federal government. The United States Supreme Court addressed this question in Leo Sheep Co. v. United States (1979) 440 U.S. 668, 99 S.Ct. 1403, 59 L.Ed.2d 677 (Leo Sheep.) There it was the federal government that, rather remarkably, was claiming an easement of necessity across Wyoming properties once owned by it, but later deeded to the Union Pacific Railroad in connection with the construction of that railroad in the mid-19th century. Two landowners of those formerly-Union Pacific properties claimed that the federal government was exceeding its powers in building a road across their lands to allow the public to reach a particular reservoir. The government countered that it had the power to do so based, among other things, on the easement by necessity doctrine.
The Supreme Court, in a unanimous decision written by Justice (later Chief Justice) Rehnquist, ruled in favor of the property owners and against the federal government. Regarding the "easement by necessity" claim of the government, the court held: "Where a private landowner conveys to another individual a portion of his lands in a certain area and retains the rest, it is presumed at common law that the grantor has reserved an easement to pass over the granted property if such passage is necessary to reach the retained property. These rights-of-way are referred to as `easements by necessity.' There are two problems with the Government's reliance on that notion in this case. First of all, whatever right of passage a private landowner might have, it is not at all clear that it would include the right to construct a road for public access to a recreational area. More importantly, the easement is not actually a matter of necessity in this case because the Government has the power of eminent domain. Jurisdictions have generally seen eminent domain and easements by necessity as alternative ways to effect the same result.... For similar reasons other state courts have held that the `easement by necessity' doctrine is not available to the sovereign." (Leo Sheep, supra, 440 U.S. at pp. 679-680, 99 S.Ct. 1403, fns. omitted.)
Which brings us to the two decisions critical to the appeal before us, Moores and Kellogg. In Moores, Division Three of this court affirmed a decision by the Mendocino County Superior Court which had ruled that the appellant-plaintiffs did not *204 have an easement by necessity over land owned by their neighbors, notwithstanding the fact that their parcel was landlocked, i.e., not accessible from a public road. Both properties had been, as of 1873, owned by the federal government. The claimed dominant tenement, the lot owned by the appellants, had been conveyed to their predecessors in interest in that year; those predecessors in interest were, first, the State of California and, second, the Regents of the University of California (The Regents). Appellants acquired that property from The Regents in 1993. (Moores, supra, 38 Cal.App.4th at p. 1048, 45 Cal.Rptr.2d 389.)
The claimed servient tenement, the property owned by the respondent Walsh, had also been federally-owned land which had been conveyed by the government to various predecessors in interest to the respondent between 1874 and 1881 and, later, to the respondent. The court noted that the respondent contended, citing Leo Sheep, that "because the State of California and later The: Regents had the power of eminent domain there was no strict necessity for an easement over" their parcel. (Moores, supra, 38 Cal.App.4th at p. 1050, 45 Cal.Rptr.2d 389.) Our colleagues in Division Three agreed, stating: "[E]ven if a right to an easement by necessity arose in 1873, such an easement `only continues while the necessity exists.' [Citations.] When the claimed servient tenement owned by the federal government was later transferred to private owners, any easement by way of necessity was extinguished because the state could then exercise its power of eminent domain. Thus, when appellants purchased the property from The Regents they acquired no easement over the Walsh parcel because The Regents had no easement to convey." (Id. at p. 1051, 45 Cal.Rptr.2d 389.)
Kellogg presented a similar fact situation as Moores, i.e., all the land involved was owned by the federal government in the late 19th century. But the Kellogg court, although quoting and purporting to rely on Moores to a certain extent, came out differently. In that case, the Third District reversed a judgment of the Calaveras County Superior Court, which had held that the owner of a "landlocked" parcel of landone containing a quartz minedid not have an easement by necessity over neighboring parcels lying between the mine and a public road. In reversing that decision, the appellate court relied on many of the precedents discussed above in holding that such a right arises "`by operation of law when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity.'" (Kellogg, supra, 102 Cal.App.4th at p. 803, 125 Cal.Rptr.2d 817, quoting Moores, supra, 38 Cal.App.4th at p. 1049, 45 Cal. Rptr.2d 389, and citing Roemer, supra, 203 Cal.App.3d 201, 249 Cal.Rptr. 743; Daywait, supra, 217 Cal.App.2d 669, 31 Cal. Rptr. 899; Reese, supra, 216 Cal.App.2d 324, 30 Cal.Rptr. 868 in support of this summary of the law.)
The Third District also cited Moores to support its holding (contrary to that of the trial court) that prior ownership by the federal government of all the properties involved satisfied the "same ownership" requirement of the two-part test. In so holding, it rejected a much earlier Court of Appeal opinion to the contrary (Bully Hill Copper Min. etc. Co. v. Bruson (1906) 4 Cal.App. 180, 183, 87 P. 237 (Bully Hill)),[4] *205 and also cited numerous secondary authorities supporting its view that "common ownership by the federal government satisfies the requirement of common ownership under the doctrine of easements by necessity. Neither the public policy nor rationale underlying easements by necessity is served by the creation of a categorical exception for the federal government." (Kellogg, supra, 102 Cal.App.4th at p. 808, 125 Cal.Rptr.2d 817.)
The Kellogg court then went on to (1) find that the record before it contained substantial evidence that all the relevant parcels of land were originally owned by the federal government and (2) disagree with the trial court as to whether or not "strict necessity" existed. The Court of Appeal held that it did, noting that the quartz mine "was landlocked by federal land when conveyed by patent in 1878 and continued to be landlocked through trial." (Kellogg, supra, 102 Cal.App.4th at p. 811, 125 Cal.Rptr.2d 817.)
The Kellogg court did not, however, discuss the eminent domain factor, for the simple reason that it was not pertinent: there, the dominant tenement was, post-1878, owned by a private party (the original quartz mine owner) and the surrounding properties, constituting the servient tenements, by the federal government. (See Kellogg, supra, 102 Cal.App.4th at pp. 800, & fn. 2, 809, 125 Cal.Rptr.2d 817.)

C. Our Resolution of this Appeal.

In the present case, the trial court prepared a three-page tentative decision which relied strongly on the holding of Kellogg in particular.[5] In sum, it held that (1) pursuant to Kellogg, prior ownership of both the relevant parcels by the federal government was sufficient to satisfy the "common ownership" requirement of an easement by necessity, (2) to establish the existence of such an easement, it is appropriate to consider whether the grantor of the claimed dominant tenement intended to convey the grant of an easement to that property, (3) it was "highly unlikely that the government intended that its patents not include legal access under any conditions" because, given the huge number of federally-issued patents for "western lands," the practical result of the opposite conclusion would be "both capricious and chaotic," (4) in the case of federal land grants, "the requirement that the necessity exist at the time of the conveyance was not intended to apply to initial patent conveyances by the federal government," i.e., could be applied at any time thereafter when the "necessity" element obtained.
Based on these several principles, the trial court found that "the federal government, as common-grantor, intended both properties to be benefited by legal access to a public road regardless of the order of conveyance of the subject properties...."[6]
*206 We disagree with the trial court's ruling for two principal reasons. First of all, as applied to federal land grants, its ruling significantly alters, if not eliminates, the "strict necessity" requirement by holding that necessity can be determined by what the common grantor probably "intended," and then holds, apparently as a matter of law, that the federal government always intended (and, presumably, still always intends) to convey a grant of an easement in favor of a claimed dominant tenement, if that easement crosses claimed servient tenement lands also previously owned by it to a public road. Neither of these holdings is supported by any appellate precedent, including Kellogg. In that case, the appellate court made clear, citing Daywalt, that the "intent" element was "an inferred intent arising from the strict necessity of access for the conveyed property." (Kellogg, supra, 102 Cal.App.4th at p. 804, 125 Cal.Rptr.2d 817, italics added.)
Put another way, if the holding of the trial court in this case is correct, it would effectively mean that any and all federal patent grants of adjoining California parcels of land, some landlocked and some not, and no matter in which order deeded to private parties, have always included (and hereafter always will) an easement of necessity from the landlocked property across the non-landlocked properties to the nearest public road.[7] We respectfully decline to adopt such a broad rule. As we have already noted, we think application of the trial court's rationale effectively eliminates the "strict necessity" requirement for an easement by necessity, a requirement which, as we will discuss below, the Kellogg court did not purport to either eliminate or alter.
Additionally, the trial court's rationale also intrudes into what appears to be something" of a market economyalbeit admittedly a unique one. Regarding that consideration, the record in this case, including the stipulated statement of facts and concessions by Murphy's counsel at oral argument, makes clear that even prior to Kellogg there was apparently always something of a "market" for landlocked former federal government parcels,[8] albeit with the value of such parcels generally being below that of their publicly-accessble cousins. Kellogg apparently changed that to a significant extent and it is clear that, if the trial court's philosophy regarding the universal "intent" of the federal government obtains, that situation will surely change even more. We believe it is not the role of the courts of this state to intrude into even a "market" as distinctive as this one.
The second major reason we disagree with the trial court's ruling is that here, unlike in Kellogg, there was a three-and-a-half-year period, from June 1929 to December 1932, in which the federal government. *207 which obviously had and has the power of eminent domain, owned the landlocked Murphy property but not the property now owned by the Burches. During that period, if the federal government wished to assure both itself and its successors in interest access to the public road adjacent to the Burch property, it could havegiven of course the existence of an asserted public purposecondemned such a right of way; it did not do so.
The courts below, in its tentative decision, did not mention the federal government's power of eminent domain at all. But as both Leo Sheep and Moores make clear, the presence of that power is critical in the present context. To briefly return to those cases, in Leo Sheep, the United States Supreme Court unanimously held that "the easement is not actually a matter of necessity in this case because the Government has the power of eminent domain. Jurisdictions have generally seen eminent domain and easements by necessity as alternative ways to effect the same result." (Leo Sheep, supra, 440 U.S. at pp. 679-680, 99 S.Ct. 1403.) And, citing this language, Moores held exactly to the same effect in a case where authorities possessing the power of eminent domain (first, the State of California and, later, The Regents) owned the claimed dominant parcel for decades during which time the claimed servient tenement was owned by various private parties: "When the claimed servient tenement owned by the federal government was later transferred to private owners, any easement by way of necessity was extinguished because the state could then exercise its power of eminent domain." (Moores, supra, 38 Cal.App.4th at p. 1051, 45 Cal.Rptr.2d 389.)[9]
There is nothing in Kellogg to the contrary. First of all, as previously noted, that court did not discuss the eminent domain issue because it was not pertinent to the facts before it. Second, there are several passages in the Kellogg decision which suggest that, whether because of the emergence of that power or any other reason, when "strict necessity" ceases to exist, an easement of necessity also ceases. Thus, the Kellogg court observed at one point that "although a strict necessity at the time of conveyance can create an easement by way of necessity, it does not preserve it for all time. As noted earlier, an easement by necessity will exist only so long as the necessity exists." (Kellogg, supra, 102 Cal.App.4th at p. 810, 125 Cal. Rptr.2d 817, italics added.) And, as both Leo Sheep and Moores have held, when an entity possessing the power of eminent domain has ownership of the claimed dominant tenement, "strict necessity" does not exist.
The Kellogg decision also contains a pregnant footnote quoting a leading real property text's explanation as to why the broad rule enunciated by this trial court is disfavored. The full text of that explanation reads: "[T]he more liberal, rule [which] would permit every remote grantee of a portion of the public domain to have an easement by necessity over surrounding lands ... overlooks the special terminability aspects of easements by necessity upon a change of circumstances. The changed circumstances effectively eliminate the necessity." (4 Powell on Real Property, Easements and Licenses (2007), § 34.07[5], p. 34-60, fns. omitted; italics added; cited in Kellogg, supra, 102 Cal.App.4th at p. 808, fn. 5, 125 Cal. Rptr.2d 817.)[10] We interpret the combination of these two passages in Kellogg to mean that that decision was not intended to articulate a rule contrary to Leo Sheep *208 and Moores as and when the owner of the landlocked parcel possesses the power of eminent domain.
Although the trial court did not address the eminent domain issue at all, the parties do in their briefs to us. Respondent Murphy attempts to minimize that issue in two ways. First of all, she cites a sentence in Reese (quoted later in Roemer) that a party's "right to seek a right-of-way of necessity is not affected by the fact that they could have a right-of-way by condemnation [citations]." (Reese, supra, 216 Cal. App.2d at pp. 329-330, 30 Cal.Rptr. 868.) However, this statement was made (a) during a period of time when, under a since-repealed California statute, a private party had a limited power of eminent domain[11] and (b) in a case in which the issue being discussed was the defendants' contention that the allowance of an easement by necessity would, because of that statute, unconstitutionally deprive them of just compensation for their property. Clearly, therefore, this brief excerpt from Reese has no application here.
Secondly, respondent argues, albeit without citing any precedent contrary to Leo Sheep and Moores, that the federal government's power of eminent domain may not have existed in the present circumstances. Thus, at one point respondent argues that "it is not at all clear that simple federal ownership of land carries with it the power to condemn a `private' easement to retained property." At another, she argues: "It is doubtful that such a power existed ...; but, even if the power existed, in the absence of an implied easement by necessity the Murphy property would remain landlocked until the power was exercised." To the contrary, as Leo Sheep and Moores make clear, it is the existence of the power of eminent domain that is relevant, because that existence and not the exercise of the powervitiates the always-critical requirement of "strict necessity" for the creation of an easement by necessity.
For all of these reasons, we disagree with the trial court and hold that an easement by necessity did not and does not exist across the property of the Burch appellants in favor of respondent Murphy and her property.[12]

IV. Disposition
The judgment appealed from is reversed and the matter remanded to the trial court with direction to enter judgment in favor of appellants.
LAMBDEN and RICHMAN, JJ., concur.
NOTES
[1] "A patent is defined as: `... [a] grant made by a government that confers on an individual fee-simple title to public lands.'" (Kellogg v. Garcia (2002) 102 Cal.App.4th 796, 800, fn. 1, 125 Cal.Rptr.2d 817 (Kellogg).)
[2] The facts stated immediately preceding this footnote are not included in the parties' stipulated facts; they are, however, in appellants' opening brief to us, and are not disputed by respondent.
[3] Other pertinent authorities discussing the general law governing easements by necessity are: Lichty v. Sickels (1983) 149 Cal.App.3d 696, 699-700, 197 Cal.Rptr. 137; Daywalt v. Walker (1963) 217 Cal.App.2d 669, 672-677, 31 Cal.Rptr. 899 (Daywalt); Marin County Hospital Dist. v. Cicurel (1957) 154 Cal. App.2d 294, 302. 316 P.2d 32.
[4] The Bully Hill case had held, without any citation of supporting authority, that "[t]he mere fact that all of the land was originally part of the public domain and hence owned by a common grantor, cannot confer the peculiar right out of which a way from necessity arises." (Bully Hill, supra, 4 Cal.App. at p. 183, 87 P. 237.)
[5] Although it also cited a number of the other cases noted above (e.g., Reese, Daywalt and Roemer), the trial court mentioned Moores only in a brief, non-substantive, footnote in its tentative decision.
[6] In so holding, the trial court noted that Kellogg supported its premise that the common ownership requirement applies to federal-common ownership when the initial parcel is conveyed by a federal patent grant, but that "[n]o appellate court has yet reviewed the creation of an easement by reservation in the context of a patent grant." Although, as the trial court noted a page earlier, there appears to be "no discernable, practical reason ... for such an artificial distinction," in view of the result we reach we have no cause to discuss the "reservation/grant" distinction further.
[7] Respondent agrees that the trial court's holding is this broad and urges us to approve it, stating in her brief to us: "[T]he federal government's patents did not contain express grants or reservation of access easements; but ... they must have intended for every parceland every parcel retained for subsequent conveyanceunder those laws [to be benefited] by a right of access." At oral argument, counsel for Murphy reaffirmed that position.
[8] The record before us shows that, starting in 1933, one year after the original federal patent grant, the Murphy property had eight interim owners until her trust's purchase of it in 1998. Further, as the Moores court specifically noted, in that case The Regents "were able to sell the land in question pursuant to a public bidding process without any ... warranty of access, and there were nine bidders." (Moores, supra, 38 Cal.App.4th at p. 1050, fn. 2, 45 Cal.Rptr.2d 389.)
[9] At oral argument, Murphy's counsel conceded that the trial court's tentative decision was not consistent with the holding of Division Three of this district in Moores.
[10] Other secondary authorities stating (and citing Moores and/or Leo Sheep in support) that the existence of the power of eminent domain in the owner of the claimed dominant parcel vitiates any easement by necessity are: 2 Smith et al., California Civil Practice, Real Property Litigation (2005) section 12:8, page 12-16; Bruce and Ely, The Law of Easements and Licenses in Land (2001) section 4:7, pages 4-15 to 4-22; and 6 Miller and Starr, California Real Estate (3d ed.2000) section 15:28, pages 15-109 to 15-110.
[11] Former Civil Code section 1001, repealed in 1975. (Stats. 1975, ch. 1240, p. 3156, § 1, operative July 1, 1976.)
[12] By way of an alternative argument in favor of affirmance, respondent asserts that the record permits this court to affirm the trial court on the basis of the doctrine of "easement by implication." But, as appellants point out, not only was this quite different theory never addressed by the trial court, it was never raised by respondent in the court below, either in her pleadings or written or oral argument to that court. We may not and will not, therefore, consider it. (See, e.g., this court's decision in Jones v. Dutra Construction Co. (1997) 57 Cal.App.4th 871, 876-877, 67 Cal. Rptr.2d 411.)